AL CHAMBERS v. THE STATE.

No. 3011.   Decided March 25, 1904.

**1.—Evidence—Murder—Disconnected Occurences.**

On a trial for murder, testimony of what third parties did or thought about the conduct of defendant and of other parties is wholly immaterial, the defendant not having any connection with the incident.

**2.—Charge of the Court—Provoking the Difficulty.**

Where the evidence might have justified a charge on provoking the difficulty, if defendant's brother had killed the deceased, it could not require a charge on this theory where it was shown that defendant was not present and did not know what had transpired to bring about the difficulty, but interfered in behalf of his brother.

**3.—Same.**

A charge which failed to define what was required in order to provoke a difficulty was erroneous.   Following McCandless v. State, 42 Texas Crim. Rep., 58; Bearden v. State, recently decided.

**4.—Same—Murder in the Second Degree—Self-Defense.**

Where the court instructed the jury, that no matter how the difficulty was brought about, if the deceased took advantage of defendant's brother, and this excited defendant so as to render his mind incapable of cool reflection, and he shot and killed the deceased, it would be murder in the second degree, such charge was erroneous, as such a state of facts would make it self-defense.

**5.—Same—Justifiable Homicide.**

If defendant knew nothing of the difficulty between his brother and

.deceased, as to who brought it about, and he came up and saw his brother in peril of his life, or of serious bodily injury, and he interfered and slew deceased, it would be a justifiable killing, and it was error to apply the law of implied malice to such a state of facts.

**6.—Same—Confusing Rights of Self-Defense.**

Where the court intended to charge upon defendant's imperfect right of self-defense in the event he brought on the difficulty, he confused the same when he added to the act of bringing on the difficulty by whipping the deceased, the words, "or by doing him serious bodily injury"—with the perfect right of self-defense.

Appeal from the District Court of Jones.   Tried below before Hon. H. R. Jones.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

. The opinion sufficiently states the facts of the case.

No briefs of either party have reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The theory of the State, as gathered from the evidenc, is to the effect that after the altercation between Lon Chambers (brother of appellant) and deceased at the schoolhouse or church, appellant and his brother Lon, and perhaps others, entered into a conspiracy to kill deceased, and afterwards on the way from church they brought on such difficulty, and appellant shot and killed deceased, not in the necessary defense of his brother, who at the time was engaged in a difficulty with deceased and that such killing under the circumstances was murder in the second degree.   On the other hand, defendant's theory was that deceased was enraged at his brother Lon, on account of some remarks attributed to Lon, in which he believed himself compared to a "nigger;" that deceased raised a row with Lon at the church and cursed and abused him; that the parties were then separated and that subsequently on the way from church Lon and deceased engaged in a difficulty, and as appellant came up, not knowing how the difficulty was brought about, he saw deceased draw something from his pocket and strike his brother Lon, and saw the blood flowing from wounds inflicted, and he believed his brother in danger of being killed, and he shot deceased in defense of his brother.

The State placed Jim Haft and Jeff Davis on the stand, and proved the following: That seeing defendant, his brother Lon Chambers and brother-in-law Vick Mason getting up and going out of the church, and not seeing deceased in the church at the time, they (Hart and Davis) in order to keep the parties from having trouble, thinking they might get together in another row, got up and went out of the church them-

selves and looked for the parties. Not seeing them about the front of the schoolhouse, witnesses went down to the creek, southwest of the schoolhouse, looking for them; that not finding them down there, witnesses returned toward the house and saw deceased going to the house from the southwest, witnesses felt at ease and returned to the house. This testimony was objected to on the ground that it was immaterial and irrelevant, was concerning matters with which defendant had no connection or control, and of the emotions, thoughts or suppositions of the witnesses, of which defendant was in no way responsible; and further that such matters and things were prejudicial to defendant's defense. This testimony related to what transpired at the church after the parties·had previously had an altercation, and occurred some time prior to the difficulty in which the homicide was committed, which was after church; and while the parties were en route home. What these third parties did, or thought about the conduct of appellant and of the other parties at the church, it occurs to us is wholly immaterial. Of course any act of either defendant or deceased of which the defendant was cognizant would be admissible in evidence, but here we have what the parties may have thought or believed with regard to the settlement of the difficulty. This testimony was inadmissible.

Appellant excepted to the charge of the court on provoking the difficulty, insisting there was no evidence on which the court was authorized to submit such a charge. As stated above, the difficulty occurred about a remark which deceased having heard of, believed was attributed to him by Lon Chambers. It seems that both deceased and Lon Chambers were visiting the same girl, who lived with her parents in a dugout, which was partly covered with white ducking. This dugout was called by some in the neighborhood "the white house." Some one remarked to Lon Chambers that deceased was cutting him out up at the white house. One of the witnesses for the State, who it is suggested told defendant of this incident, said that he understood Lon Chambers to say something in that connection about a "nigger," and he inferred that he called deceased a negro. Lon Chambers explains this by stating that one of the boys asked him something about the white house, and believing it referred to the Roosevelt-Booker T. Washington-White House incident, said he did not think much of the white house since the "niggers" were eating there; but had no thought of attributing this to deceased. In fact he did not know at the time that the dugout, where the young lady lived, was called the "white house." Deceased, however, believed the remark was made about him, and is shown to have made threats against Lon Chambers on that account and when he met·him at the church, he accosted him in regard thereto. It is shown that he there denounced and abused Lon Chambers, and among other things called him a son of a bitch. The parties were about to fight but were separated by interference of others. Appellant hearing of this incident

went down to where the parties were (as is stated by him and other witnesses for the defense) for the purpose of stopping the difficulty. He talked with deceased about it, but deceased did not seem to be pacified, and among other things said that Lon Chambers had called him a "nigger" and had to take it back, or he would fix him. After this occurrence appellant is shown to have gotten in a buggy and gone to his house, some two miles, and gotten his pistol, as he explains for the purpose of protecting his brother in case a difficulty was brought on by deceased. After church had broken up and the parties were proceeding home, Wells (deceased) and Lon Chambers got into a fight. According to the State's theory, as heretofore stated, there is some testimony to show that this difficulty was brought about on the part of Lon Chambers and his brother by some prearrangement or conspiracy on their part. The only State's witness that speaks at this point, says that as he came up to the crowd he heard Wells say, to Lon, "If nothing else but a fight will do you, God damn you, I can give you that," and he said, "Put up your knife and get ready." Lon said "Put up yours," or something to that effect. Lon Chambers testified on this point, that he had started home in a buggy with his brother and sister, and after going some distance from the church he got out of the buggy, in order to go and see the Locklin girls and ascertain if they had hard feelings toward him, as they might have heard about the negro incident; and before he turned off of the main road on the path to their house, he came up with a crowd of boys, deceased being in the crowd; and he told deceased he had nothing against him, "but I thought he ought to apologize." He said, "Apologize! hell and damnation; I never carry them. You are on your own land, but I can whip you." And with that he wheeled his horse and got down. And then witness says he remarked, "If nothing but a fight will do you, all right." And then deceased said, "Shut your knife and get ready"—witness at the time having his knife open in his hand whittling. That he shut his knife up, and put it in his pants pocket, and laid his coat down and said, "A fair fight." If deceased had a knife at that time he never saw it. Then deceased came up kinder swinging himself, and he reached back like he was going to draw something out, witness stepped back, and then deceased hit him; that he hit him on the cheek and then on the nose; that the wound on the nose had to have four stitches taken in it; that when he hit him the blood flowed all over him, and he was blinded; and the next thing he heard something like a whip pop; and the next his brother was holding him; that he could not say how long it was after he was hit before he heard the pistol fire; that he thought deceased had a pistol from his maneuvers when they had the difficulty down at the church. He did not know at the time what he hit him with, but it blinded and dazed him. On this point appellant himself testified that the first thing he knew when he rode up to the crowd he saw his brother Lon and deceased fighting;

that he saw Wells pull something from his pocket, which he thought was a pistol, and then he saw him strike Lon, and then blood flowed, and he thought it was a knife and that he was killing his brother; that he jumped off of his horse, ran around and fired. We do not find that this phase of the case, as testified to by appellant, is anywhere contradicted in the record. Now, as to the charge of the court on provoking the difficulty, as between deceased and Lon Chambers, if the demand for apology under the circumstances was intended to and calculated to produce a difficulty, then a charge on provoking the difficulty on a trial of Lon Chambers, if he had killed deceased, would have been proper. But if appellant was not present and did not know what had transpired to bring about the difficulty, and when he came up, he saw his brother assaulted and put in danger of his life or serious bodily injury, and he simply interfered on behalf of his brother, we fail to see how a charge on provoking the difficulty was authorized as to him. But if such a charge was authorized, that given by the court was improper and incorrect, as the court nowhere defined what was required in order to provoke a difficulty. On this subject see McCandless v. State, 42 Texas Crim. Rep., 58.

Appellant also excepted to the following charge of the court—the court after giving a definition of murder in the second degree, in applying the law to the facts used this language: "If Lon Chambers and Dick Wells became engaged in a personal difficulty or combat, however brought about, and Dick Wells, by any means, obtained greatly the advantage of Lon Chambers in such difficulty, and if the defendant was Lon Chambers' brother, and in a transport of passion or excitement engendered by the difficulty, and its attending circumstances, joined in and made himself a party to the difficulty, and while his mind by reason of such passion or excitement was incapable of cool reflection, shot and killed Dick Wells, or if prompted by a sudden impulse of friendship or love for Lon Chambers or of resentment at injuries inflicted or about to be inflicted in behalf of Lon Chambers, under circumstances showing neither deliberation nor reflection, and during the progress of such difficulty at a time when from mental agitation or excitement he was incapable of comprehending and contemplating the consequences of his acts, shot and killed Dick Wells; or if the defendant entered into such difficulty under the immediate influence of any other sudden rash, inconsiderate impulse, passion or excitement, and before his feelings had time to cool, shot and killed Dick Wells—in either case from such killing the law will imply malice, if the same was neither manslaughter nor justifiable homicide, as explained in succeeding instructions; and if you believe from the evidence that the defendant did, in Scurry County, Texas, on or about the 29th day of March, 1903, unlawfully shoot and kill the said Dick Wells, under circumstances from which the law will imply malice as above explained, and should further believe from the

evidence that such killing was neither manslaughter nor justifiable homicide, as defined and explained in succeeding instructions, you will find the defendant guilty of murder in the second degree," etc. This is not only a confused attempt to present the law, but was well calculated to mislead the jury to the injury of appellant. The court tells the jury, in the first portion of said charge, that no matter how the difficulty was brought about, if Dick Wells took advantage of Chambers, and this excited appellant so as to render his mind incapable of cool reflection, and he shot and killed Wells, this would be murder in the second degree, whereas the law is, if Wells brought about the difficulty, and taking an undue advantage of Lon Chambers, put him in danger of his life or of serious bodily injury, and defendant on that account became excited and slew Wells, it would be in self-defense. Moreover, if appellant knew nothing about who brought on the difficulty, and he came and saw his brother in peril of his life or of serious bodily injury, and he interefered and slew deceased, it would be justifiable as in defense of his brother. It is not necessary to further analyze this charge, as the balance of it is on a par with that portion discussed.

The succeeding paragraph of the charge is as follows: "Or if you believe from the evidence that at the Innis schoolhouse in Scurry County, Texas, on the day of the alleged killing and anterior to such killing, Dick Wells provoked a difficulty with Lon Chambers and cursed and abused the said Lon Chambers, but abandoned such difficulty, and that thereafter defendant and his brother, Lon Chambers, entered into an agreement to assault the said Dick Wells for the purpose of whipping him, or doing him serious bodily injury, and in preparation therefor the defendant armed himself for the purpose conditionally not absolutely to kill or seriously injure deceased in case the latter, in the progress of such difficulty, should kill or seriously injure his brother, Lon Chambers, and in furtherance of such agreement the said Lon Chambers sought and brought on the difficulty with Dick Wells, and that Lon Chambers and the said Dick Wells engaged in a personal conflict in which the said Dick Wells obtained the advantage of Lon Chambers and struck Lon Chambers with a violent instrument in the face, causing blood to flow, and the defendant in a transport of passion or excitement engendered by the difficulty and its attending circumstances, interfered in such difficulty in behalf of his brother, Lon Chambers, and while his mind by reason of such passion or excitement was incapable of cool reflection, shot and killed Dick Wells, from such killing the law will imply malice, if the same was neither manslaughter nor justifiable homicide, as explained in succeeding instructions; and if you believe from the evidence, beyond a reasonable doubt, that the defendant did in Scurry County, Texas, on or about the time alleged in the indictment, unlawfully shoot and kill Dick Wells, under circumstances from which the law will imply malice, as above explained, you will find

defendant guilty of murder in the second degree," etc. This charge was evidently intended by the court to be an instruction as to defendant's right of self-defense in case he and his brother Lon entered into an agreement to assault Dick Wells for the purpose of whipping him. However, the court in this connection says, "or of doing him serious bodily injury." This last clause was simply confusing the imperfect right of self-defense with the perfect right of self-defense; but the court treats the charge as embracing the imperfect right of self-defense. He then goes on to tell the jury that if deceased in the conflict got the advantage of Lon Chambers and struck him with a violent instrument in the face, causing blood to flow, etc., and producing in defendant's mind passion which rendered him incapable of cool reflection, and under such circumstances he shot and killed the said Wells, the law would imply malice, for the same was neither manslaughter nor justifiable homicide, as explained in the succeeding portions of the charge. The proposition stated by the court, as we understand it, or rather intended to be stated by him, was the imperfect right of self-defense, which would ordinarily render appellant guilty of manslaughter, inasmuch as he did not intend a deadly assault.

There are a number of other charges that are assigned as error, and some of them are evidently incorrect; indeed, the whole charge in applying the law to the facts of the case was not a clear presentation either of the State's theory or of the defendant's theory. But we do not deem it necessary to go into a further discussion of the instructions. For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*