## J. M. PARNELL v. THE STATE.

### No. 3410. Decided November 21, 1906.

**1.—Murder—Practice in District Court—Codefendant.**

Upon a trial for murder, there was no error in not permitting defendant's codefendants, who were confined in the jail, to be brought into the court room during the progress of the trial in order that defendant and his counsel might successfully cross-examine the witnesses, who were to testify to the acts and declarations of said codefendant.

**2.—Same—Declarations of Third Parties in Absence of Defendant—Conspiracy.**

Upon trial for murder, certain acts, conduct and statements of one of defendant's codefendants, occurring in his absence long after the killing, were not admissible, and could not show conspiracy.

**3.—Same—Charge of Court—Principal.**

Where the indictment merely charged the defendant with the murder of deceased, the court should have charged the offense in the words of the indictment, and not that he was charged as principal.

**4.—Same—Charge of Court—Intent—Criminal Responsibility.**

It is a well known rule of law in Texas that the accused is only bound to answer in the courts of this State to his own felonious or unlawful intent, and that the intent of his codefendant, unless he adopts the same and acts with the same intent, does not bind him at all; and he might be a principal in the sense of a participant to a killing, and his criminality or grade of punishment might be very different from his codefendant.

**5.—Same—Knowledge of Unlawful Intent—Defense of Another—Charge of Court—Principal of First or Second Degree.**

Upon trial for murder, where the evidence showed that deceased was on top of defendant's son, some forty or fifty yards away from him; that the defendant was informed that deceased had his son down killing him, and to come to his rescue; that defendant and another immediately hastened to the scene of the difficulty; that appellant drew his pistol and struck deceased knocking him off of his son; that there was no testimony that defendant at any time fired at deceased or that he knew anything about the difficulty before he was informed to come to his son's rescue, and that deceased was killed by the party accompanying defendant in self-defense, it was reversible error to impute the condition of his codefendant's mind to the defendant, without regard as to whether defendant was principal of the first or second degree, or whether he acted without either intent in the defense of his son.

**6.—Same—Provoking Difficulty—Manslaughter.**

On trial for murder, where the evidence showed that defendant interfered in behalf of his son who was held down on the ground by deceased, without knowing who provoked the difficulty, it was error to charge on provoking the difficulty, especially without submitting the question as to whether defendant knew whether his son provoked the difficulty and approved of such action; and without submitting the converse of the proposition, to wit: that if his son, even if he provoked the difficulty, acted without intent to kill, neither would be guilty of any higher offense than manslaughter.

**7.—Same—Self-Defense—Defense of Another—Charge of Court.**

Upon trial for murder, where the evidence showed that the defendant acted in defense of his son, the court should have charged the law in regard to the defense of another, and not merely the abstract proposition of law of self-defense, as the defendant would have been entitled to an acquittal in either event.

Appeal from the District Court of Henderson. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*A. G. Greenwood, G. W. Allison, Faulk & Faulk, Watkins, Green & Richardson,* for appellant.— On the question of the court's charge with reference to principals and criminal intent: Wyers v. State, 22 Texas Crim. App., 261; Irvine v. State, 20 Texas Crim. App., 41; Jennings v. State, 7 Texas Crim. App., 358; Williams v. State, 42 Texas, 368; McMahon v. State, 81 S. W. Rep., 299; Guffee v. State, 8 Texas Crim. App., 206; Chambers v. State, 79 S. W. Rep., 574; Shumate v. State, 42 S. W. Rep., 604. On question of provoking difficulty: Craiger v. State, 13 Texas Ct., 739; Garza v. State, id., 721; Chapman v. State, 76 S. W. Rep., 481. On question of charge on defense of another, Crenshaw v. State, 85 S. W. Rep., 1148.

*J. E. Yantis,* Assistant Attorney-General, for the State.

BROOKS, Judge.—This conviction was for murder in the second degree, with five years in the penitentiary fixed as the punishment.

Appellant, Tom Snowden, Winton Parnell and Ed Fancher were separately indicted for the murder of Wash Roberts. The evidence shows that deceased had been drinking some and went to the depot at Poyner, Henderson County, late in the afternoon of December 2, 1905, where he met Winton Parnell and Ed Fancher, both of whom were quite drunk. A few moments after deceased arrived at the depot, he and Winton Parnell became involved in a difficulty, which appears to have been started and provoked by either Winton Parnell or Fancher. Deceased, who had been assaulted by Winton Parnell, pushed Winton off the depot platform at least twice, and finally deceased got Winton Parnell down upon the ground, and was sitting astride of him. The testimony for appellant shows that deceased was attempting to strike Winton Parnell with an open knife, and that his son had the right hand of deceased holding it with both of his hands. All of the testimony admits that deceased was on top of Winton Parnell. The State's testimony does not show that he had a knife. At this juncture a boy went to the mill of appellant, some forty or fifty yards from the depot, and informed appellant, who was standing at the door of the mill with Snowden, that Wash Roberts (deceased) had his son down killing him, and requested appellant to run down to the depot quickly. Appellant ran to the depot, accompanied by Snowden. Immediately upon approaching deceased, who was on top of his son, appellant drew his pistol and struck deceased across the head, knocking him off of his son. Some of the evidence shows that Snowden also hit deceased at the time appellant did, and it was the result of the blows of both appellant and Snowden that caused deceased to be knocked off the person of Winton Parnell (appellant's son). Imme-

diately upon deceased having been struck with the blows on the head as stated, he arose and started at Tom Snowden with a knife, as the testimony on the part of the defense shows. Snowden shot deceased, from which wound the physicians testified that he died. There is some testimony that appellant shot his pistol, but no witness, as we understand the facts, swears that he shot at any one, but merely that he fired his pistol. At any rate there is no testimony that appellant at any time fired at deceased. The record does not show any fact indicating that appellant knew anything about the fact of his son Fancher and deceased being at the depot, or that he knew anything about the difficulty between deceased and his son, until informed by the boy, while standing at the mill, that deceased had his son down killing him. There is some testimony in the record that deceased some time before the killing, went to appellant's mill and protested against the employment of a negro by appellant. As to whom this difficulty was between, or how it originated, or what was the motive prompting deceased in the difficulty, is not disclosed by the record. Be this as it may, there is no testimony in this record that connects appellant with the motive, animus, purpose or intent of his son, Winton, before or at the time of the difficulty, which resulted in the death of deceased.

Appellant's first assignment complains that the court erred in refusing his request, made at the beginning of the trial, with his code-fendants, to wit: Winton Parnell and Ed Fancher, who were confined in the county jail, by permitting them to be in the courtroom, during the progress of the trial, in order that appellant and his counsel might successfully cross-examine the witnesses who were to testify to the acts and declarations of said above named parties. In this there was no error, since appellant could confer, both before and during the trial, with said parties in jail as to what they knew about the facts of this case. We know of no law that would require the court to have all of appellant's codefendants to sit in the courtroom during the trial of either. It would not be amiss to do so, but there is no law requiring it.

The third complaint is that the court erred in permitting the State to prove, over his objection, certain conduct and statements of defendant Fancher and Winton Parnell, occurring at the drugstore in Poyner, long after the killing, and in the absence of appellant. This testimony was not admissible. It is true that the trial court in a special charge, instructed the jury that they should not consider the acts and statements of said parties at the drugstore. If the record upon another trial is, as here stated, this testimony should not be admitted. Nor do we think it was germane and proper to permit the State to prove what kind of a hat defendant Fancher had on after the difficulty. The facts show, if there had been a conspiracy to kill deceased, it had terminated at that time, and the fact that appellant's codefendant, Ed Fancher,

may have picked up deceased's hat, which was unknown to appellant, could not be any criminative fact against appellant.

Appellant's seventh complaint is that the court erred in the first paragraph of the charge, using this language: "In this case the defendant J. M. Parnell stands charged by indictment as a principal with the offense of the murder of Wash Roberts, alleged in the indictment to have been committed by defendant, J. M. Parnell, in the county of Henderson," etc. The indictment merely charged appellant with the murder of Roberts. It would be better to charge the offense in the words of the indictment.

Appellant's eighth assignment complains of the following charge: "When an unlawful killing is established the condition of the mind of the party killing, and of those who are principals to the killing at the time, just before and just after the killing is an important consideration in determining the grade of the homicide," etc. And in the succeeding paragraph, the court used the following language: "In order to warrant a verdict in the first degree, malice must be shown by the evidence to have existed, that is, the jury must be satisfied from the evidence beyond a reasonable doubt that the killing was a consummation of a previously formed design to take the life of the person killed, and that the design to kill was formed deliberately with a sedate mind, that is, at the time when the mind of the person killing and of those who are principals thereto was or were self-possessed, and capable of contemplating the consequences of the act proposed to be done." And also, in the ninth paragraph, appellant complains of the following charge: "When the evidence satisfies the minds of the jury beyond a reasonable doubt that the killing was the result of a previously formed design by the defendant to kill deceased or to a principal to such a killing, and that the design was formed when the mind was calm and sedate," etc. And again, "To warrant a conviction of murder in the first degree the jury must be satisfied by the evidence beyond a reasonable doubt that the defendant, before the act, deliberately formed the design with a calm and sedate mind to kill the deceased or to be a principal to such killing; that he selected and used the weapon or instrument reasonably sufficient to accomplish the death by the mode and manner of its use, or acted as principal to such selection or use," etc. Appellant also complains of the eleventh paragraph of the charge: "Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, J. M. Parnell, did, as charged in the indictment, with express malice aforethought, along or with another or others as a principal, with a pistol or pistols, a club or scantling, being a deadly weapon, . * * * did unlawfully shoot or strike, or shoot, strike and thereby kill said Wash Roberts, you will find him guilty of murder in the first degree." Appellant objects to these charges on the ground that they authorized the jury to impute the condition of Fancher's, Winton Parnell's and Tom Snowden's mind to this defendant, without regard to whether he was a principal of the first or second degree, or whether acting without

the knowledge of their evil intent, if such they had, he would have been entirely justified. It likewise instructs the jury, as appellant insists, that if at the time of the killing, defendant was a principal thereto and self-possessed and capable of contemplating the consequences of his act, he would be guilty of murder in the first degree, when in law he might have been entirely self-possessed and capable of contemplating the consequences of his act, and still be entirely justifiable. Appellant further complains that the charge is erroneous, in that the ninth paragraph thereof instructs the jury that, if defendant was a principal to such killing, and that when he consented to be a principal, his mind was calm and sedate, he would be guilty of murder in the first degree, ignoring the fact that his codefendants, under the law, might be guilty of murder in the first degree, and he acted with them, and be guilty of some other degree of homicide, or of no offense at all. These criticisms are all correct. Many of the questions suggested by these charges were discussed by this court in Guffee v. State, 8 Texas Crim. App., 187. It is a well known rule of law in Texas that appellant is only bound to answer in the courts of this State to his own felonious or unlawful intent; that the intent of his codefendant, unless he adopts the same and acts with the same intent, do not bind him at all. Appellant might be a principal in the sense of a participant to a killing, and his criminality or grade of punishment might be very different from his codefendants. The record does not show that appellant knew anything about the unlawful intent of his son and Fancher in provoking the difficulty with deceased, and if appellant did not know anything about it, and being apprised that his son was in danger of death or serious bodily injury, and he hurried to his rescue, in company with Snowden, each believing that the son was in danger of death or serious bodily injury, and acting on such belief they struck with pistols, in order to relieve the son of appellant from danger or serious injury or death, then in that event if they used no more force than was necessary to accomplish such purpose, appellant and Snowden would not be guilty of any offense in law. Since, under the law of this State, appellant and Snowden each had the right to defend the life or person of Winton Parnell to the same extent and subject only to the same limitations that Winton Parnell would have had if he had been acting in perfect self-defense. Of course, if appellant and Snowden knew that Winton Parnell and Fancher had aroused, exasperated and provoked deceased to a deadly conflict, and knowing all of these facts had come to his rescue, when Winton Parnell was driven to extremity, as the above facts show, and at that juncture, or during the melee that followed, killed deceased, then they would be guilty of murder in the first or second degree, if the difficulty was provoked with intent to kill, or they would be guilty of manslaughter, if the difficulty was provoked without such apparent intention to kill. However, as stated, we find no evidence in this record, indicating that either appellant or Snowden knew anything about the diffi-

culty, or its cause or occasion, until informed by the boy that Winton Parnell was being killed by deceased. If this was all the information they had about the matter, and upon this information alone they acted and struck deceased with their pistols, or appellant struck deceased with his pistol, which resulted in the release of his son from his danger, then in law he would be guilty of no offense. If appellant and Snowden knocked deceased off of Winton Parnell in order to protect his life or his person from serious bodily injury, and this alone was their purpose, and thereupon deceased made an assault with a knife upon Snowden, then Snowden would not be required to retreat in order to defend himself from such deadly assault, but he could stand his ground and slay deceased. And if this alone was the motive actuating him, he would be guilty of no offense. He being guiltless, appellant also would be guiltless. But if Snowden, after deceased was violently removed from astride the person of appellant's son, in a transport of passion, aroused by an adequate cause, being assaulted by deceased with a knife, shot and killed deceased, and not in defense of himself, he would be guilty of manslaughter; and if the jury should believe the cause was inadequate, then he would be guilty of murder in the second degree. If Snowden, moved by adequate cause, aroused from passion, sudden resentment or terror, shot deceased, he would not be guilty, as stated, of a higher grade of offense than manslaughter. Appellant could be a principal to this offense. But if appellant was present, knowing the unlawful intent of Snowden, and Snowden in a transport of passion, aroused by an inadequate cause, and appellant encouraged him by words, acts or gestures, to kill deceased, then appellant would be guilty of murder in the second degree.

The eleventh error complains of the following portion of the charge: "If you believe from the evidence beyond a reasonable doubt that the defendant, acting alone or with another or others as a principal with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused without adequate cause, and not in defense of another, * * * did thereby kill, you will find him guilty of murder in the second degree." This charge is erroneous, as stated above, in that it couples appellant to the intent that may have actuated two other participants in the tragedy, regardless of whether he knew their purpose and intent or not. The thirteenth assignment complains of a similar charge applying the law of manslaughter. Both of these charges are erroneous.

The fourteenth assignment complains that the court charged on provoking the difficulty. The evidence suggests provoking the difficulty on the part of Fancher and Winton Parnell, but there is no evidence showing that appellant provoked the difficulty. As stated above, all that appellant did, as shown by this record, was to interfere in behalf of his son, in the first instance, without knowing who

provoked the difficulty. This being true he had the perfect right of self-defense. Chambers v. State, 79 S. W. Rep., 574; Shumate v. State, 42 S. W. Rep., 604. Furthermore, if the evidence had shown provocation of the difficulty on the part of appellant's son, and he knew such fact, still the converse of the charge given, should have been submitted to the jury; that is, if he provoked the difficulty with the apparent attention to kill, then the right of self-defense would be forfeited. If he provoked it, without such intention, he would not be guilty of any higher offense than manslaughter. Airhart v. State, 51 S. W. Rep., 215; Chapman v. State, 76 S. W. Rep., 481.

Appellant further complains of the following charge of the court: "On the law of self-defense, you are further charged: Homicide is permitted by law when inflicted for the purpose of preventing the offense of murder or the infliction of serious bodily injury when the killing takes place under the following circumstances: 1. It must reasonably appear by the acts or by words coupled with the acts of the person killed that it was the purpose and intent of such persons to commit murder or to inflict serious bodily injury. 2. The killing must take place while the person killed was in the act of committing the offense of murder or inflicting serious bodily injury, or after some act done by him showing evidently an intent to commit such offense of murder or to inflict serious bodily injury." Appellant insists that said instruction has no foundation in the evidence and instead of favoring appellant, injured him, because the court should have gone further and told the jury that the serious bodily injury about to be inflicted might be for the purpose of another than the person killing; and because the court erred in charging said abstract propositions of law, without applying the same to the real facts of this case. This charge should have authorized the jury to acquit appellant, if appellant acted in defense of his son. He had the right to so act and to the same extent as if the son had been justified in defending himself. In other words, appellant not knowing anything about the cause of the difficulty, as stated several times, if he merely interfered to protect his son against death or serious bodily injury, he had a right in law to do so, and it would be the duty of the jury to acquit him, if they had a reasonable doubt of this being his intent.

Various other questions are raised in appellant's able brief, but we believe the discussion of the above assignments eliminates any necessity for the review of the others.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*