## MAYHEW v. STATE.

(Court of Criminal Appeals of Texas.　Feb. 7, 1912.)

1. HOMICIDE (§ 300*)—TRIAL—INSTRUCTIONS—SELF-DEFENSE.

Where the state claimed that accused's attack on deceased was unprovoked, and accused claimed that he acted in defense of himself and his son, and there was evidence supporting accused's claim, it was error to charge that a person can defend himself or the person of another from unlawful attack, and is justified in using all necessary force to defend himself, but no more than reasonably necessary, since, if accused was authorized to use any force in self-defense, he was authorized to use all force necessary, and a charge on the theory of excessive force was improper.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614–632; Dec. Dig. § 300.*]

2. HOMICIDE (§ 301*)—TRIAL—INSTRUCTIONS—DEFENSE OF ANOTHER.

Where the theory of the state, that accused and his son had an understanding, by which the son was to engage in a conflict with deceased, and the accused was then to interfere, was combated by accused, who claimed that he acted in defense of himself and his son, it was error to charge that a person acting in defense of another is entitled to the same rights as the person in whose behalf he acted, since, even though the son was in the wrong, if accused did not know who brought on the difficulty, his culpability was to be measured by his own intent and apprehension of danger, and not by that of his son.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 633; Dec. Dig. § 301.*]

3. HOMICIDE (§ 301*)—TRIAL—INSTRUCTIONS—DEFENSE OF ANOTHER—THREATS.

Instruction that, if the deceased had made threats to take the life of accused's son, or to do him serious bodily harm, and if, from knowledge of such facts, it appeared to accused when he stabbed deceased that deceased was about to take the life of his son, or to do him serious bodily harm, and that accused stabbed deceased, believing such action to be necessary to prevent death or serious bodily harm upon his son, the jury should acquit accused was error, since it required the jury to find that the threats were actually made; whereas the true test was whether accused believed such threats to have been made.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 633; Dec. Dig. § 301.*]

4. HOMICIDE (§ 301*)—TRIAL—INSTRUCTIONS—DEFENSE OF ANOTHER.

A charge that, if accused attempted to go to the place where his son and deceased were engaged in a conflict, and in making such attempt was attacked by P., and at the time he stabbed deceased it reasonably appeared to him that deceased and P. were acting together to take the life of accused's son, or do him serious bodily harm, accused had a right to take the life of either deceased or P. was not a proper charge, since it appeared to require a concert of action between deceased and P. to authorize accused to exercise the right of self-defense, which was not necessary.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 633; Dec. Dig. § 301.*]

5. HOMICIDE (§ 286*)—TRIAL—INSTRUCTIONS.

It appeared that the killing took place in the afternoon; that in the morning of that day deceased and accused's son had some difficulty, of which accused had been informed; that accused used language indicating resentment against deceased; that accused had gone to his place of business, and was engaged in other matters, when he was notified of the later trouble between his son and deceased; and that he immediately went to his son's defense. *Held*, that a refusal to charge that, if the killing occurred, not on a previously formed design, but on a subsequently formed design, they should attribute it to the latter, and not to the original design was error.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 586–591; Dec. Dig. § 286.*]

Appeal from District Court, Eastland County; Thomas L. Blanton, Judge.

Bill Mayhew was convicted of murder in the second degree, and he appeals. Reversed and remanded.

C. H. Jenkins, Scott & Brelsford, W. L. Grogan, and J. J. Butts, for appellant. James T. Wilson, D. G. Hunt, J. R. Stubblefield, and C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of murder in the second degree; the jury awarding him a term of five years in the penitentiary.

The issues presented may be briefly stated as follows: The state's contention from the evidence was that appellant and Jim Mayhew and Aaron Mayhew had entered into an agreement or sort of conspiracy to whip and probably kill the deceased, Will Burkhead. On the day of the homicide, prior thereto in the morning, about 11 o'clock, a difficulty occurred in Jim Mayhew's barber shop between one of the Mayhew boys and Burkhead, which resulted in an ordinary fist fight. In that fight, Jim Mayhew undertook to reach Burkhead, the deceased, with a razor, but was prevented. The parties were separated. In some way, information of this trouble was conveyed to appellant. This angered appellant, and on account of this, and the fact that Burkhead owed him a considerable amount of money, and had not paid it, caused appellant to make a threat against deceased; and it is further shown on the part of the state that appellant sought Burkhead, but failed to find him, and he also remarked, in speaking of the former fight, something to the effect that if Jim Mayhew got in a contest with deceased the result of the fight might be different from what it was with the other Mayhew, with whom he had had a fight in the barber shop. It is shown that about 2:30 or 3 o'clock Jim Mayhew went to where the deceased was, or met him (deceased), who was on horseback, and caught the bridle reins of his horse; whereupon deceased jumped from his horse, and a fight ensued. In the meantime, appellant had gone to his store, and was engaged about his usual business. One of the younger Mayhews informed appellant that they had his son Jim down, and were killing him. Appellant immediately ran to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

where the trouble was, and as he approached a man named Pruett picked up a rock and threw it, striking appellant. Appellant ran to where his son Jim and Burkhead were engaged in their difficulty, and began cutting Burkhead with his knife. From these wounds Burkhead died. It is shown also by the evidence that Burkhead made some threats, which were communicated to appellant. The evidence also suggested the issue of self-defense in favor of appellant personally, as well as in favor of his defense of his son.

[1] 1. The court undertook to charge these various theories in instructions given the jury. It will be seen from this brief summary the issue of murder in the second degree was in the case from the state's standpoint. From the defendant's standpoint, there was self-defense, defense of his son, and self-defense, viewed from the standpoint of communicated threats. Error is assigned upon these various charges of the court, and various and sundry special charges asked and refused. It is not the purpose of this opinion to review all these matters in detail. It is deemed unnecessary to do so. In charging self-defense, the court gave the following: "Every person, in law, is permitted to defend himself, or to defend the person of another, against any unlawful attack, or against what to him might reasonably appear to be an unlawful attack, reasonably threatening injury to his person or to the person of another, and is justified in using all necessary and reasonable force to defend himself or the person of another, but no more than the circumstances reasonably indicate to be necessary; and homicide is justified by law, when committed in defense of one's person, or the person of another, against what, to him, reasonably appears to be an unlawful attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury," etc.

Exceptions were reserved to this charge, especially that portion of it which limited his perfect right of self-defense to the use of no more force than was necessary. This charge is not the law in regard to the matter of perfect self-defense as held by an unbroken line of authorities in this state. It has been held error to charge that, if defendant used more force than necessary to protect himself, he would be the aggressor, where perfect self-defense is the issue. When the state's case is an unprovoked attack, and the defendant's case is perfect self-defense, and where defendant had the right of self-defense at all, the question of excessive force is not involved. Rice v. State, 51 Tex. Cr. R. 286, 103 S. W. 1156; Terrell v. State, 53 Tex. Cr. R. 604, 111 S. W. 152; Hightower v. State, 56 Tex. Cr. R. 252, 119 S. W. 691, 133 Am. St. Rep. 966. If the evidence shows that defendant was authorized to use any force upon the theory of perfect self-defense,

he was authorized to use all force necessary; and it is error to charge on the theory of excessive force. Scott v. State, 46 Tex. Cr. R. 313, 81 S. W. 950; Rice v. State, 51 Tex. Cr. R. 286, 103 S. W. 1156. It has been held error, also, to charge the defendant was not authorized to use more force than necessary, or reasonably indicated to be necessary, and where there is no evidence of excessive force, and when, if defendant's theory is to be credited, he acted while deceased was making an attack upon him. Carson v. State, 57 Tex. Cr. R. 394, 123 S. W. 590, 136 Am. St. Rep. 981; Huddleston v. State, 54 Tex. Cr. R. 93, 112 S. W. 64, 130 Am. St. Rep. 875; Scott v. State, 46 Tex. Cr. R. 313, 81 S. W. 950.

Appellant's theory of the case, as before stated, was that of self-defense, both as to himself, as well as to protect his son from death or serious bodily injury. Under such circumstances, the question of excessive force is not in the case, and it was error to limit the right to act in perfect self-defense by charging the jury that the accused could use no more force than was necessary. Where the right of perfect self-defense is involved, and is the issue, forming the predicate of the charge, then the accused has the right to use all force necessary, without any limitation as to the quantity of such force. This doctrine also applies where the party is defending another, and this must be viewed from his standpoint, and not that of the attitude of the party to whose defense he goes. The law is that whatever he may do for himself he may do for another, under such circumstances, and this to be viewed from his standpoint. Johnson v. State, 5 Tex. App. 47; Glover v. State, 33 Tex. Cr. R. 227, 26 S. W. 204; Glaze v. State, 45 S. W. 906; Garcia v. State, 57 S. W. 651; Martinez v. State, 88 S. W. 234; Johnson v. State, 59 S. W. 269; Monson v. State, 63 S. W. 647; Palmer v. State, 47 Tex. Cr. R. 270, 83 S. W. 202; Parnell v. State, 50 Tex. Cr. R. 424, 98 S. W. 269; Griffin v. State, 57 Tex. Cr. R. 280, 122 S. W. 553; Scott v. State, 60 Tex. Cr. R. 318, 131 S. W. 1073; Sterling v. State, 15 Tex. App. 256.

[2] 2. This brings us to another exception to the charge, which is as follows: "A person acting in behalf of another, to prevent such other from being killed, disfigured, or to sustain serious bodily injury, is entitled to the same right and justification under the law as would have the party in whose behalf he acted." Various and sundry objections are urged to this charge. The vice in this charge, it is contended, among other things, is that it is a proposition of law tersely stated, and it stands out in the charge as a separate paragraph. This charge, as stated, cannot be the law of this case. It places the defendant's attitude in an erroneous light before the jury, and one that was evidently detrimental to him. The evidence seems to be without contradiction that Jim Mayhew

was in the wrong in the difficulty between himself and Burkhead, the deceased; that he went to or met Burkhead, who was riding, caught the bridle reins of his horse, and said or did something which provoked or brought about the difficulty. Burkhead alighted, and they engaged in a fight. Appellant was not present, and was not informed of the circumstances of the fight. His notification from one of the Mayhews was to the effect that they had his son down, and was killing him. In this attitude, he ran to his rescue, and as he approached the scene he found Burkhead had his son down, and was on him. As he approached, Pruett interfered, and struck him with a rock. This charge limited appellant's right to defend his son to the same right that the son had to defend himself. Under the facts of this case, this was not the correct proposition. The unquestioned correctly stated proposition of law in regard to this matter in Texas is that the culpability of one who acts in defense of another is measured by the intent with which he acted, and not by the intent of the other, or the party for whom he was acting, unless the defendant knew or might reasonably have known the intent of the other party. Monson v. State, 63 S. W. 650; Guffee v. State, 8 Tex. App. 187; Henry v. State, 50 S. W. 399; Chambers v. State, 46 Tex. Cr. R. 66, 79 S. W. 572; Glover v. State, 33 Tex. Cr. R. 227, 26 S. W. 204; Foster v. State, 8 Tex. App. 253; Snell v. State, 29 Tex. App. 240, 15 S. W. 722, 25 Am. St. Rep. 723; Parnell v. State, 50 Tex. Cr. R. 420, 98 S. W. 269; Hargrove v. State, 33 Tex. Cr. R. 431, 26 S. W. 993. If the appellant knew nothing about who brought on the difficulty between his son and the deceased, and came upon the scene and saw his son in peril of his life or serious bodily injury, and he interfered and killed the deceased, it would be on his part a homicide in self-defense. Chambers v. State, 46 Tex. Cr. R. 66, 79 S. W. 572; Parnell v. State, 50 Tex. Cr. R. 420, 98 S. W. 269, and authorities already cited.

It is an undeniable proposition of law in this state that the apprehension of danger must always be viewed from the standpoint of the accused, whether he acts in his own behalf or in behalf of another. Parnell v. State, 50 Tex. Cr. R. 420, 98 S. W. 269; Griffin v. State, 57 Tex. Cr. R. 280, 122 S. W. 553; Glover v. State, 33 Tex. Cr. R. 227, 26 S. W. 204; Snell v. State, 29 Tex. App. 236, 15 S. W. 722, 25 Am. St. Rep. 723; Saens v. State, 20 S. W. 739. A party acting in defense of another is only bound to answer for his own intent. The intent of his codefendant, unless he adopts the same acts with the same intent, does not bind him. Authorities already cited. These would seem to be a sufficient number of authorities to sustain the proposition that this charge of the court was erroneous. Under this charge, the jury could have found, and doubtless did from the verdict, that appellant and his son Jim

were in an agreement for Jim to bring on the difficulty, and that his father was to interfere, if it became necessary. Under the court's charge, they could easily and readily, and, perhaps, did, reach that conclusion. The state's theory was that this agreement or understanding was had between the parties, and in pursuance of this, when the fight came on, appellant rushed upon the scene and engaged in the conflict. This was the state's theory, and this theory is emphasized in the charge by leaving the jury to look at the defense's proposition from the standpoint of the son, and not the standpoint of the appellant. The son had provoked the difficulty, and if appellant knew that, and engaged in the difficulty under those circumstances, this charge was correct; but it was an issue earnestly combated by appellant in his testimony and throughout the trial. This was error.

[3] 3. The charge on threats is also made the subject of exception. As before stated, it had been communicated to appellant that deceased had made threats. The language employed by the court is as follows: "You are further charged that, should you believe from the evidence that prior to the difficulty between the deceased and Jim Mayhew, the deceased made a threat or threats to take the life of Jim Mayhew, or to do him serious bodily harm, and if, from knowledge of such threats, it reasonably appeared to the defendant, at the time he stabbed and cut the deceased, if he did so, that the deceased was then about to carry out and to put in execution such threat so previously made, and was then about to take the life of Jim Mayhew, or to do him serious bodily harm, or, should you believe from the evidence that, at the time the defendant stabbed and cut the deceased, if he did so, it then reasonably appeared to the defendant that he (deceased) was then making any hostile demonstration toward Jim Mayhew reasonably evidencing an intention to put into execution such threat, if any, and was then about to inflict death or some serious bodily harm upon Jim Mayhew, and that, reasonably believing such action to be necessary to prevent the infliction of death or serious bodily harm upon said Jim Mayhew, the defendant stabbed and cut the deceased, if he did do so, you would in such case acquit the defendant."

A casual inspection of this charge will discover that the jury was required to believe the threats were made, and not that the defendant so believed. If defendant was informed that the threats were made, and believed and acted upon them, they were the same to him as if they were in fact made; but the jury was not so instructed on this phase of the law, but, on the contrary, the criterion was given the jury that they should believe the threats were or had been made. If the defendant believed the threats had been made, and acted upon them under the

conditions stated, he would be entitled to an acquittal, whether the jury, in the light of subsequent events, believed them or not. It is the defendant's belief of the threats that prompts his action, and the case must be viewed from that standpoint, and not from the jury's standpoint. It has been always held error to require the jury to find that threats were made. Defendant would have the right to act on them if he believed they were made. Swain v. State, 48 Tex. Cr. R. 103, 86 S. W. 335; Huddleston v. State, 54 Tex. Cr. R. 93, 112 S. W. 64, 130 Am. St. Rep. 875; Buckner v. State, 55 Tex. Cr. R. 517, 117 S. W. 802; Lundy v. State, 59 Tex. Cr. R. 131, 127 S. W. 1034; Hightower v. State, 56 Tex. Cr. R. 251, 119 S. W. 691, 133 Am. St. Rep. 966.

[4] 4. There is another exception to the charge which it may be well enough to notice. The court charged the jury that if defendant made an attempt to go to the place where Will Burkhead and Jim Mayhew were engaged in a conflict on the ground, if they were so engaged, and in making such attempt was attacked by one A. M. Pruett, and at the time he stabbed or cut deceased, if he did so, it reasonably appeared to defendant that Will Burkhead and A. M. Pruett were then present and acting together for the purpose of taking the life of said Jim Mayhew, or doing him some serious bodily injury, then defendant had the right to take the life of either or both the said Will Burkhead and A. M. Pruett, if it reasonably appeared, etc. The contention is made that this limited the right of self-defense on the part of appellant, and made it contingent on whether Burkhead and Pruett were acting together, and whether Pruett made an actual attack on defendant; whereas he would have the right to defend as well against either or both as if they were not acting together, and equally so if Pruett had made an attack upon the defendant. This charge is, to say the least of it, awkwardly framed, and upon another trial appellant's legal rights in regard to this phase of the testimony should be more aptly stated. This seems to have been a limitation upon appellant's right of self-defense, and may have been so regarded by the jury. While it is unquestionably true that appellant would have the right to defend against Burkhead and Pruett, acting together to take the life of his son, at the same time, he would have the right to act against Burkhead and deceased as well without a concert of action as with such concert. The limitation, from this aspect of the case, upon another trial should not be so strictly limited to a concert of action between the parties to take the life of the son of appellant.

[5] 5. There are several charges asked, among others, by the accused to the effect that if the killing occurred, not on a previously formed design, but on a subsequently formed design, that the jury would attribute it to the latter, and not the original, design. There had been a difficulty in the morning, as before stated, in which appellant was not a party in any way, but which had been communicated to and angered him, and he used language indicating resentment. This had passed, and the defendant's testimony was that he had gone to his place of business, and was engaged in other matters, when he was informed of the trouble between his son and the deceased, and that he then rushed to his defense. The jury's attention should have been called to this, and if the killing occurred with reference to the latter transaction, and the purpose to kill was in defense of his son from that standpoint, and not from any previous provocation that may have arisen, then they would give defendant the benefit of that view of the case, and impute it to the latter, instead of the former, design. The state's theory was appellant was acting under former design, aided by the claimed agreement to whip or kill deceased. Appellant contradicted this by his testimony. Such a charge was called for and pertinent. We understand this to be the law in Texas since the famous decision by Judge Roberts, in the case of McCoy v. State, 25 Tex. 33, 78 Am. Dec. 520.

There are other errors urged for reversal, but, in view of what has been said, we deem it unnecessary to discuss them.

The judgment is reversed, and the cause is remanded.