# NOVEMBER 20, 1935

BEN C. ALSUP v. THE STATE.

No. 17771. Delivered November 20, 1935.

The opinion states the case.

*Carl E. Ratliff* and *D. E. Magee,* both of Levelland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for fourteen years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Martha Beulah Alsup by shooting her with a gun.

Appellant came home drunk and attempted to whip his 15 year old son. Appellant's wife interfered, and, with the aid of the son and 17 year old daughter, succeeded in tying appellant down. She then went with her children to a neighbor's house where they spent the night. When they returned home the next morning, a quarrel ensued. The following evening appellant's wife had the sheriff to arrest him and carry him to town. While the sheriff was at the house, appellant's son hid a double barrel hammerless shotgun. Returning home about 11 p. m., appellant took his wife to task for having had him arrested. He asked one of his sons to get him the shotgun, but instead of complying with his request the boy ran to a neighbor's house. Another son got the gun and gave it to appellant. Appellant loaded the gun and he and his wife stepped outside where appellant shot at a cat. He reloaded the gun and they went into the house. He asked his wife to call one of his children who was outside. According to appellant's testimony, as his wife was going through the kitchen, he started to carry the gun to the wall for the purpose of placing it in its accustomed place. As he approached he stumbled and the gun discharged and his daughter, the deceased, was accidentally killed. He had no intention of killing anyone.

One of appellant's sons testified for the State, in part, as follows: "As to who shot my little sister, the gun went off, daddy had it in his hand; daddy and Rena were scuffling over it and it just went off and shot her. Both daddy and Rena had it; daddy had started to hang it up and Rena caught hold of it and it went off and shot her. Daddy didn't have that gun pointed at anybody before it went off. I remember talking to you and the grand jury. I remember that I told the grand jury that my daddy had that gun pointed at my mother; that he told her to go to the kitchen and she had gone through the door into the kitchen. Daddy had the gun in his hands at that time. I don't know whether he had the gun pointed at my mother as she went through the kitchen door; I didn't see it if it was."

The witness testified further that at the time Rena took

hold of the gun appellant was in the act of hanging it on the wall. He said: "Then just because my daddy was going to put the gun on the wall there Rena grabbed it." Rena, appellant's 17 year old daughter, who was a witness for the State, testified in substance as follows: Appellant was close to the rack where he kept the gun, and his wife was going through the kitchen. As appellant took the gun from the machine toward the rack he staggered. The witness was standing near the gun rack. She did not know whether her father was looking into the kitchen or not. When appellant raised the gun with one hand it was pointing toward his wife. The witness grabbed the gun and it fired, killing her sister. After the shot was fired appellant dropped the gun and the witness grabbed it. The gun fired a second time after appellant had released it. The witness did not know whether she pulled the trigger or whether her father pulled it when the gun was discharged the first time.

Bill of exception No. 2 presents the following occurrence: Bennie James Alsup, son of appellant, a witness for the State, testified that when the sheriff came to arrest appellant he (the witness) hid a double barrel shotgun that was in the house. The district attorney then elicited from the witness, over appellant's proper objection, that he hid the gun because he was afraid appellant would hurt his mother. "Proof of reasons of a witness for his actions where it involves an opinion as to the guilt of defendant or amounts to an expression hurtful to defendant, is not admissible." Branch's Annotated Penal Code, sec. 133; Chambers v. State, 79 S. W., 572. It was appellant's theory, given support in his testimony, that he had no intention of killing his wife; that he had not threatened her or made any demonstration toward her; and that the gun was discharged while he was attempting to hang it on the wall. We think the bill of exception reflects reversible error.

The court gave in charge Art. 42 of the Penal Code, which reads as follows: "One intending to commit a felony and *who in the act or preparing for or executing the same* shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed." (Italics ours).

It was under the terms of the foregoing article that the State sought a conviction. There was no testimony tending to show that appellant intended to kill deceased. In applying the law to the facts the court failed to take note of the part

of Art. 42 which we have italicized. On another trial the charge should conform to the language to the statute.

Appellant excepted to the charge on several grounds. The opinion is expressed that the court should have responded to the third and fourth exceptions.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.