### GEO. P. ARTHUR v. THE STATE.

#### No. 2755.   Decided May 11, 1904.

**1.—Charge of the Court—Provoking Difficulty.**

It is error to submit the law of provoking the difficulty as an estoppel to the right of self-defense, where the evidence does not raise this issue.

**2.—Same—Arrest Not an Issue.**

A charge upon manslaughter which instructs the jury that if the deceased made a violent attack upon defendant for the purpose of arresting him, the latter would be guilty of manslaughter if he killed deceased, there being no evidence that deceased was undertaking an arrest, is error.

**3.—Same—Self Defense.**

Where the evidence of the defense showed that the homicide occurred at night while defendant and his stepson were loading some railroad crossties which defendant believed he had authority to take, having been informed through his stepson that deceased, the foreman, said he could do so, and that deceased made an attack upon him with a pistol, the court should have given defendant's requested instructions on the right of self-defense.

Appeal from the District Court of Taylor. Tried below before Hon. J. H. Calhoun.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Geo. P. Arthur,* in propria persona, for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—This is a manslaughter conviction. Exception was reserved to the charge of the court and refusal to give requested instruction. The court submitted the theory of provoking the difficulty, as an estopel to the right of self-defense. There was no testimony suggesting provoking the difficulty. He also charged the jury, if they should find that defendant in the night-time was in the act of committing theft of personal property under the control of deceased, and that deceased, for the purpose of preventing the taking of said personal property by defndant, or for the purpose of arresting appellant, made a violent assault upon him, putting appellant in fear of death or great bodily harm, and that defendant under those circum-

stances shot and killed deceased, he would be guilty of manslaughter.
It is contended that the charge on manslaughter is erroneous. There
is no evidence in the record that deceased was undertaking to arrest
appellant. This portion of the charge submitted to the jury a theory
or basis of conviction not suggested by the testimony, and, of course,
is erroneous.

Appellant requested the court to instruct the jury that if .defendant
had been informed deceased had given his permission for him (appel-
lant) to take some old crossties, and further find that defendant on
the night in question did go to where these crossties were for the pur-
pose of getting them, and was engaged in taking them at the time he
killed deceased, and that he killed deceased in his self-defense, under
these circumstances, they should acquit, athough they might find and
believe he in fact did not have such consent or permission of deceased;
and if they had a reasonable doubt as to whether his permission was
given or defendant believed he had the permission to take the cross-
ties, they would acquit. This phase of the law was put in different
forms by two requested instructions, both of which were refused. The
facts, in substance, as applicable to this phase of the case, disclose
that deceased was the foreman and had charge of a gang of men work-
ing on the Texas & Pacific Railway Company's track; that during the
day these hands had taken some of the old crossties from under the
rails and thrown them to one side; that these hands, as well as de-
ceased, saw the stepson of appellant stop and look at these old crossties
just after they had left their work for the evening, and were returning·
to the section house. After supper, deceased, who was foreman, and
one of the hands, a Mexican, armed themselves with a six-shooter and
a target rifle, and proceeded to where these crossties had been taken
out and placed themselves on guard to watch them. The inference is
they suspected the ties would be taken that night. After they reached
the scene of the trouble, some hour and a half, appellant and his step-
son drove up in a wagon, and began preparation to load the crossties
on the wagon. The Mexican testified that they were secreted in some
bushes, or behind some bushes; that when appellant and his stepson
began taking the crossties, deceased approached appellant and spoke to
him; that appellant immediately shot him. He got in his wagon to
drive away, firing another shot. The sheriff testified that the Mexican
witness pointed out the spot where he was secreted, and that it was
ninety-two steps to the point of the homicide from where the Mexican
was in hiding. This is the State's case.

Appellant introduced the deputy sheriff, who testified that a pistol,
which was picked up at the body of deceased, had been recently fired.
Appellant's stepson testified that the morning preceding the homicide.
at night, deceased stopped him and told him his stepfather could have
the old crossties taken from the roadbed,˚ if he would come after them
in the night. In pursuance of this information he had located the

crossties in the evening as he returned from school, and that night he and his father went in a wagon for the purpose of securing them; that just after they reached the place, and while his father was placing the ties over the fence, and he (witness) was putting them in the wagon, the horses became ..frightened, and he looked up and saw two men coming up from the road towards the wagon, walking rapidly. One of them stopped opposite the south front wheel; the other walked towards the back of the wagon. In the meantime defendant had gotten through the fence and was near the north hind wheel of the wagon, assisting witness in holding the horses. Defendant said, "Hello!" Deceased said, "You damn son of a bitch, what are you doing?" De-, fendant said, "I am getting these old ties." Deceased said, "By God, you will never get another one," and jumped towards defendant. As deceased rushed forward, defendant stopped and deceased's pistol clicked and fired towards defendant. Immediately after deceased fired, defendant fired and deceased fell. There was only a second or two between the shots. The man near the front wheel, whom I have since learned was the Mexican, jumped toward the side of the wagon and fired at me. I dropped down behind the front wheel, and was not struck. The Mexican then ran and defendant fired at him. The horses got scared and trotted off, and we could not catch them. They followed the road towards home and stopped at the gate, about halfway home. In addition to what has been said in regard to the testimony of the Mexican, he further stated that "when deceased walked up to defendant he said 'Good night,' and I heard no other words. I could not see deceased's hand at the time the gun fired. I could not see his body above the wagon. Only two shots were fired. Arthur fired both. These were not more than two minutes apart." This is a sufficient collation of the testimony as bearing on the question of self-defense. It is evident that appellant was entitled to the requested instruction, or instructions which would present the law applicable to this phase of the case. If deceased told the stepson of appellant that his father could take these crossties at night, and then followed appellant out and undertook to kill him, as testified by the stepson, the killing would be clearly in self-defense. If appellant believed he had authority to take the ties, as told him by his stepson, his right of self-defense would not be changed and would be as strong and cogent as if deceased had authorized him to take them. Upon another trial self-defense should be submitted from these several standpoints.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*