## WILL ROBBINS v. THE STATE.

No. 2306.   Decided March 26, 1913.

Rehearing denied April 23, 1913.

**1.—Murder—Misconduct of Jury—Opinion of Juror.**

Where two of the jurors who sat on defendant's case had expressed themselves as to the guilt of the defendant and denied under oath on their voir dire that they had, and one of them sat in the courtroom and heard the testimony on the former trial, who denied ever having heard anything of the case, the cause must be reversed and remanded, as there is nothing in the record making any denial of this.

**2.—Same—Charge of Court—Character and Disposition of Deceased.**

Where, upon trial of murder, there was no evidence as to the relative strength of the parties and the character and disposition of the deceased, the court should not have submitted a charge on this matter.

**3.—Same—Charge of Court—Self-defense—Threats.**

Where, upon trial of murder, there was evidence of threats by deceased, it was not a question whether the threats were actually made, but the charge of the court on self-defense should have instructed the jury that this must be viewed from defendant's standpoint, and not from the standpoint as to whether the threats were or were not made.

**4.—Same—Charge of Court—Words and Phrases.**

Where the court's charge encumbered defendant's defensive matter with the words, "but he would not have the right to go with this gun, intending to harm deceased," etc., the same was error, as defendant's side of the case should be given untrammeled by the State's view of it.

**5.—Same—Motion for Rehearing—Misconduct of Jury—Practice on Appeal.**

Where the facts adduced upon motion for new trial on the question of misconduct of jury were not filed in the court below during the term, they cannot be considered on appeal, and where the State filed such testimony in this court and requested a recall of the mandate, the motion for rehearing on this ground must be overruled.

Appeal from the District Court of Robertson.   Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*C. W. Kinard* and *Will C. Perry* and *H. D. Morhead,* for appellant.—On question of the court's charge on threats:   Merritt v. State, 2 Texas Crim. App., 177; Ledbetter v. State, 21 id., 344; Taylor v. State, 14 id., 340; Gonzales v. State, 32 Texas Crim. Rep., 611.

On question of relative strength and disposition of parties:   Lee v. State, 66 Texas Crim. Rep., 567, 148 S. W. Rep., 706.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree.

The motion for new trial is quite lengthy, urging many reasons why the judgment should be reversed. Attached to the motion for new trial are the affidavits of R. L. Walker, Tom Skains, Tom Kindrick, Ollie Russell, W. H. Willhelm and J. R. Watson, showing in substance and in effect that the juror T. F. Lewis, one of the impaneled jurors who tried appellant, was in the courtroom at the previous January term of the court when appellant's case was tried. What became of the case at the January term is not definitely shown; the indications are, however, that there was a hung jury. The case went over until the July term, and appellant was again tried and convicted. From that conviction this appeal is prosecuted. These affidavits show that Lewis was in the courtroom during the trial of the case at the January term and heard the testimony of several, if not all witnesses who testified. The affidavits mention several of the most important witnesses Juror Lewis heard. By some of these affidavits it is shown that Lewis said that if he was in that "bunch," referring to the jury, he would hang the defendant. This remark was made while the jury had under consideration appellant's case at the January term of the court, and while the jury was passing along the street observed by Lewis and those who were present with him and heard the remark.

After the case was tried at the July term, on which jury Juror Lewis sat, it is shown by the affidavit of Kindrick that he saw Lewis standing in front of the window at Pete McCoy's barbershop. The affiant was standing close by. Some one remarked that Will Robbins' case was coming up, and Lewis stated, "Well, I'll go up and see what I can do to him." This was about the time court was called. This affiant was at the court room subsequently during the trial and saw Lewis on the jury and commented on it, and afterwards informed the attorneys. The defendant makes an affidavit he knew nothing of these matters until after his conviction. The attorneys in the case file their affidavits to the effect that they knew the two jurors, E. B. Lusk and T. F. Lewis; that Lusk and Lewis served as jurors in the trial of the case; that they nor either of them knew, or had ever heard from any source, that said jurors Lusk and Lewis, or either of them, were prejudiced against the defendant, and that they or either of them had formed or expressed an opinion as to the guilt or innocence of defendant; that they and each of them well remember the questions asked and propounded to said jurors and each of them, and that they also well remember the answers made by said jurors, and each of them, when they, the said jurors, Lusk and Lewis, were on a voir dire examination; that upon said voir dire examination both Lusk and Lewis answered they had neither formed nor expressed an opinion as to the guilt or innocence of the defendant; that they had no bias for nor prejudice against the defendant; and that they nor either of them had ever heard anything about the case of defendant. They further state that they believed and relied upon the answers made by said jurors, and that it was only after defendant had been tried and convicted that they learned

that said jurors were biased and prejudiced against defendant, and that they and each of them had formed and expressed an opinion as to defendant's guilt; and that no person or persons had ever told or intimated to affiants or either of them of the prejudice of said jurors. Appellant made an affidavit to the same effect as did his attorneys. As to juror Lusk, whose name has been mentioned, it is shown by the affidavit of J. E. Tamplin that he was personally acquainted with Lusk, and was on Lusk's place in January, 1912; that he and affiant were coming to the town of Franklin in a buggy belonging to Lusk and a conversation arose between them in regard to appellant's case. It was while the grand jury was in session. Quoting his language: "We were coming down the red hill just the other side of Cedar, and we were talking about the killing. I remarked I would not like to be in Will Robbins' place, and E. B. Lusk said, 'A man like that had no business running around among the people, and I would like to be on the jury and see how long I could send him up for.'" Affiant says he was in the courtroom part of the time during the trial of the defendant during the July term and saw Lusk on the jury. Quoting him again: "After this I told my folks if they convicted Will Robbins, I was going to tell his attorneys, because I thought it was right; that E. B. Lusk did tell affiant the above, and since the last trial in July in the District Court of Robertson County, and since the conviction I told the attorneys; and I voluntarily make this affidavit."

This motion is not in any way contested. The jurors Lusk and Lewis were not called upon for a denial, or if they were they did not, so far as this record is concerned, make any denial. We can not afford to let a conviction of this sort stand upon the verdict of such jurors as those whose names are mentioned. The accused is entitled to an impartial jury. Here we have two men sitting upon the jury, both of whom had expressed themselves as to the guilt of the defendant, and denied under oath that they had, and one of them sat in the courtroom and heard the testimony on the former trial, and Lewis on his voir dire examination denied ever having heard anything of the case. The adverse opinion of Lewis to appellant's cause is shown by several affiants, and Lusk by one affiant.

There are numerous objections to the court's charge, some of them it is well enough to notice in view of another trial. The court gave the following instruction: "If from the evidence you believe the defendant killed the said C. C. McPhearson, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him," etc. It is urged as error that the court should not have limited the right of self-defense with reference to the character and relative

strength of the parties and defendant's knowledge of the character and disposition of the deceased. There was no evidence in the case as to the relative strength of the parties, and the character or reputation of the two men was not put in issue. The theory upon which appellant based his self-defense was that the deceased shot at him first with a shotgun before he, appellant, returned the shot. The relative strength of the parties and their character and disposition, etc., was not an issue in the case, and it would make very little difference to appellant about the size or strength of his opponent, or his character and disposition, where the defensive theory was that he was shooting at him with a double-barrel shotgun. That the relative strength of the parties and character and disposition might some time be a matter of importance may be conceded, but not in a case like this, and appellant's defensive matter ought not to have been burdened with this matter.

The 26th paragraph of the charge is criticised. This was given in reference to threats. The court charged the jury in regard to threats as follows: "If you believe from the evidence, that the deceased at or immediately preceding the time the shots were fired, did some act which was reasonably calculated in view of all the circumstances of the case as they appeared to defendant, viewed from his standpoint, and no other, to produce in the mind of defendant the belief that the deceased was then about to execute a threat or threats made by him, the deceased, to take the life of the defendant, or to do him some serious bodily harm, if such a threat or threats was made, the defendant would be justified in acting upon such appearance of danger," etc. The attack upon this phase of the charge is in regard to the limitation found in the expression "if such a threat or threats was made." This clause in the charge should not have limited the law of threats. The testimony on behalf of appellant was to the effect from two sources that deceased had threatened his life. We have had occasion to reverse cases on charges of similar import under similar facts. The rule is if appellant was informed of the fact that his life had been threatened, and acting upon that information fired the fatal shot, it was not a matter for the jury to determine whether threats were made or not, nor was it for the court to say so. If appellant was informed of the fact and acted upon it, the threats, so far as self-defense is concerned, should be viewed from his standpoint, and if he believed the threats were made and acted upon them, the jury should view it from his standpoint and not from the standpoint as to whether the threats were or were not made. It is unnecessary to cite the authorities. The question has been so often decided that it has become axiomatic.

The court gave the following charge, to which exception was reserved: "You are instructed in connection with the doctrine of self-defense, that defendant would have the right to arm himself with a gun, and go to his work or to seek deceased, for the purpose of compromising any difficulty between them, if there was any difficulty or of demanding an explanation of deceased, and such conduct would not impair his right

of self-defense, but he would not have the right to go with his gun intending to harm deceased, and do any hostile act which would be calculated to provoke a difficulty with deceased." Exception was reserved to the qualification found in the latter part of the charge, towit: "But he would not have the right to go with his gun intending to harm deceased," etc. This qualification ought not to have been given. Appellant is entitled to an affirmative charge on his defensive matter unincumbered by qualifications which would deprive him of his right of self-defense. That the court should give the State's side of the case is correct, but the State's side of the case should be given and the defendant's side should be given untrammeled by the State's view of it. This question has been often decided, and it is unnecessary to cite authorities to support it.

It is unnecessary to review the facts or give them in detail. It is sufficient to say that the facts were of such a nature as called for a charge upon the different issues presented by the court both for the State and the defendant. The trouble with the charge was, the manner in which it was written and the restrictions and curtailments of appellant's legal rights under the evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

## ON REHEARING.

### April 23, 1913.

DAVIDSON, Presiding Judge.—On a former day of the term the judgment herein was reversed and remanded on matters growing out of errors in the charge; also the failure of the court to grant the motion for new trial on account of jurors Lusk and Lewis not being qualified to sit in the case. It is not the purpose of this opinion on rehearing to go into a discussion of the charges and the errors growing out of those phases of the record. We are of opinion the case was properly reversed in reference to those matters.

With reference to the two jurors, the record before us showed without controversy that the two jurors were not competent, and the showing made by defendant under the record before us was not controverted. We, therefore, held that under the showing made by the defendant the jurors ought not to have been permitted to sit in the case; that they had shown themselves thoroughly partial, having expressed opinions entirely contrary to their fairness as jurors.

The State has filed a motion for rehearing showing, in effect, that there was a contest in the trial court with reference to the two jurors mentioned, and that evidence was introduced by the State controverting the testimony introduced by the defendant, thereby forming the issue. The testimony sent up and appended to the motion for rehearing by the State is in direct conflict with the testimony introduced by the defendant, and had that testimony been before this court on appeal it

is not probable at all, so far as that question is concerned, the case would have been reversed. The showing made by the State now is the type-written statement from the stenographic report of the evidence taken on the contest showing that the two jurors were not guilty of the conduct and use of the language imputed to them. The trial court had this evidence before him when he passed upon the motion, but it was not sent up in the transcript which was before this court, and in fact it seems not to have been filed in the trial court. Had the evidence taken by the State contesting the motion below been sent up so as to be considered by this court, that question may have been decided differently and doubtless would have been. As the matter is presented this court cannot consider this evidence, because not filed in the court below during the term; in fact was not there filed. Without further comment on this phase of the motion, we are of opinion that the State's request to recall mandate and affirm the judgment can not be granted.

The request to recall the mandate is refused and the State's motion for rehearing is overruled.

*Overruled.*