### B. LYONS v. THE STATE.

No. 2599.   Decided June 25, 1913.

Rehearing denied October 22, 1913.

**1.—Murder—Self-Defense—Charge of Court—Threats.**

It is the well settled law of Texas that a party is entitled to a charge on self-defense independent of a charge on threats. Following McDowell v. State, 55 Texas Crim. Rep., 596, and other cases.

**2.—Same—Case Stated—Charge of Court—Self-Defense.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the deceased just before the shooting by defendant threw his hand to his hip pocket as if to draw a weapon, the court should have submitted self-defense on the appearance of danger independent of threats.

**3.—Same—Charge of Court—Self-Defense—Threats—Serious Bodily Harm.**

Where, upon trial of murder, the court's charge on self-defense limited defendant's right of self-defense to serious bodily harm, omitting his right to

defend if he believed deceased was going to kill him, the same was reversible error.

### 4.—Same—Charge of Court—Defendant's Standpoint—Actual Attack.

Where, upon trial of murder, the defendant acted upon appearances of danger viewed in the light of threats, he was entitled to have the case presented from his standpoint and not what the jury might believe about it, and where the charge limited the same to an actual attack, the same was reversible error. Following Duke v. State, 61 Texas Crim. Rep., 19, and other cases.

### 5.—Same—Burden of Proof—Charge of Court.

Where the court's charge on self-defense shifted the burden of proof to the defendant and required the jury to believe the defensive theory before they could acquit, the same was reversible error. Following Castro v. State, 66 Texas Crim. Rep., 282; 146 S. W. Rep., 553.

### 6.—Same—Relative Strength of Parties—Charge of Court.

Where, upon trial of murder, the question of relative strength of parties was not raised by the evidence, a charge upon this issue was reversible error. Following Hickey v. State, 45 Texas Crim. Rep., 297, and other cases.

### 7.—Same—Charge of Court—Force.

Where, upon trial of murder, the evidence did not raise the doctrine of excessive force, the same should not have been submitted to the jury. Following Comegys v. State, 62 Texas Crim. Rep., 231, and other cases.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Robt. G. Street.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson* and *Elmo Johnson,* for appellant.—Cited cases in opinion.

*C. E. Lane,* Assistant Attorney-General, and *C. H. Theobald,* County Attorney, for the State.—On question of court's charge on self-defense: Bussey v. State, 153 S. W. Rep., 873; Summers v. State, 66 Texas Crim. Rep., 551, 148 S. W. Rep., 774; Swain v. State, 48 Texas Crim. Rep., 98; Morse v. State, 60 Texas Crim. Rep., 268; Lee v. State, 66 Texas Crim. Rep., 567, 148 S. W. Rep., 706.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter and given five years in the penitentiary.

The State's theory of the case was an unprovoked killing; that deceased was at a house of prostitution on Christmas night; in a room with a woman whom he, though married to another woman, had been living with off and on for some years in adultery; that appellant had been in the room with deceased and this woman, and had gone off to bring some intoxicating liquor for the three; had returned and asked for deceased; that he went into the woman's room at her invitation where deceased was, and while the woman had her arms around the neck of deceased and was doing nothing, appellant shot and killed him.

This was, in substance, the testimony of the State's witness, Mabel George, who witnessed the homicide. For the defense it is shown that deceased was a violent man who went habitually armed, and was shown to have had a pistol a short time prior to the homicide, and had exhibited it in the house where the homicide occurred within a couple of hours before the killing, and that appellant saw him exhibit the pistol, and heard him make the statement he expected trouble and was ready for it. It was also shown that he had assaulted the woman, Mabel George, and other women with pistols, and had beaten them over the head with pistols. It was further in evidence deceased had made threats to take appellant's life. Those threats were communicated to appellant before the homicide, and there was also evidence of threats to kill appellant made by deceased directly to appellant prior to the homicide as well as deceased had uttered gross insults about the mother of appellant, which were communicated to appellant, and also uttered at the time of the homicide by deceased directly to appellant. It was further in evidence that appellant was at the house where the homicide occurred and had gone to get the intoxicating liquors at the request of deceased. All the parties were drinking. That he returned to the house, and on meeting deceased in the room of Mabel George, deceased asked defendant if he was interfering with them, himself and Mabel George, and cursed defendant, and Mabel George asked deceased not to curse the defendant, and that the deceased then said to defendant, "You know I have got it in for you; I got no use for you anyway." That deceased then repeated the insults he had said concerning appellant's mother, which were of an outrageous nature, and said to appellant, "Don't you like it? If you don't, I don't give a damn." The defendant then said, "Certainly I don't like it." Deceased then reached towards his hip pocket, whereupon appellant shot and killed him. The insulting language in regard to the mother of appellant was, without repeating it in its vulgar form, that he, deceased, had been sleeping with appellant's mother. The evidence further shows deceased was shot twice.

The charge on self-defense is criticised and made the basis of appellant's contention for a reversal of the judgment. Referring to the charge on self-defense we find this: "Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury." Another clause of the charge on this subject is as follows: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time,

and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

Applying the law to the case the court thus charged the jury: "If from the evidence you believe the defendant killed the said W. Sherrard but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectations or fear, the defendant killed the deceased, then you should acquit him; or if the defendant believed that deceased had threatened his life, and this threat had been communicated to the defendant before the homicide, and at the time of the homicide deceased by some act then done manifested an intention to execute the threat, as viewed from the standpoint of the defendant at the time of the homicide, then you will acquit the defendant, even though you might believe from the evidence that the defendant was in no danger at the time of suffering serious bodily harm or injury at the hands of the deceased, or if you have a reasonable doubt on this point, you will acquit the defendant."

This is the entire charge on the issue of self-defense. There are quite a number of exceptions taken to this charge. It is deemed unnecessary to state them. They present these matters from almost, if not quite, every standpoint upon which exceptions could well be urged. It is the well settled law of Texas that a party is entitled to a charge on self-defense independent of a charge on threats. See Branch's Criminal Law, section 482, for collation of authorities, where he lays down this rule: "Wherever self-defense is an issue defendant is entitled to a distinct and affirmative charge on that issue apart from and untrammeled by a charge on self-defense in connection with threats." McDowell v. State, 55 Texas Crim. Rep., 596; Lundy v. State, 59 Texas Crim. Rep., 131; Swain v. State, 48 Texas Crim. Rep., 98; Fuller v. State, 95 S. W. Rep., 1039. Appellant's defensive matter was, when he walked into the room where Mabel George and deceased were, deceased, after stating to them that he had slept with the mother of appellant, threw his hand to his hip pocket as if to draw a weapon and appellant shot. This gave him the right of self-defense on the appearances of danger independent of threats. Under all the authorities appellant was entitled to a clearcut, well-defined charge on self-defense from appearance of danger, and also a distinct affirmative charge independent of the other charge on self-defense viewed in the light of threats.

Again the court's charge is attacked on account of the peculiar language given by the court: "If the defendant believed that deceased had threatened his life, and this threat had been communicated to the defendant before the homicide, and at the time of the homicide deceased by some act then done manifested an intention to execute the threat, as

viewed from the standpoint of the defendant at the time of the homicide, then you will acquit the defendant, even though you might believe from the evidence that the defendant was in no danger at the time of suffering serious bodily harm or injury at the hands of the deceased." That clause of the charge is attacked, first, because it limited appellant's right of self-defense to serious bodily harm, omitting his right to defend if he believed deceased was going to kill him. This under all the authorities is error. For collation of authorities see Branch's Criminal Law, section 482. Wherever appellant seeks to justify upon self-defense or from appearances of danger or self-defense viewed in the light of threats, he is entitled to have the case presented from his standpoint, and not what the jury might believe about it, but the jury must view it in the light it presented itself to the accused at the time of the transaction, and he is as much entitled to the right of self-defense viewed from both standpoints as resisting the attack from threats to take his life as doing bodily harm. This quoted charge ignores this phase of the law. Appellant had the right to act from the appearances of danger as well as from an actual attack. It will be noticed that the charge of the court in making the application to the facts, limited the consideration of the jury to an actual attack made upon him, which from the manner and character and relative strength of the parties, etc. There was no actual attack testified to by any witness in the case. It was one of self-defense purely from the standpoint of apparent danger. Under all the authorities that have been called to our attention the party is entitled to a clear, well-defined charge on the issues made by the testimony. There was not a fact introduced by either side showing an actual attack. All the testimony bearing on this question shows that it was only apparent danger. Holmes v. State, 155 S. W. Rep., 205; Parish v. State, 153 S. W. Rep., 327; Rhea v. State, 67 Texas Crim. Rep., 197, 148 S. W Rep., 578; Brady v. State, 65 S. W. Rep., 521; Johnson v. State, 63 Texas Crim. Rep., 50; Barnes v. State, 57 Texas Crim. Rep., 449; Duke v. State, 61 Texas Crim Rep., 19; Nix v. State, 74 S. W. Rep., 764; Stewart v. State, 40 Texas Crim. Rep., 649; Watson v. State, 50 Texas Crim. Rep., 171; Adams v. State, 47 Texas Crim. Rep., 347; Branch's Crim. Law, sec. 482. This charge on self-defense also shifts the burden of proof and places it upon the defendant, and requires the jury to believe the defensive theory before they can acquit. This is not the correct rule. Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 553, and authorities therein cited. It will be noted by recurring to the quoted charge again, the language is, "If from the evidence you believe the defendant killed the said W. Sherrard, but further believe that at the time of so doing the deceased had made *an attack on him* which, from the manner and character of it," etc. The jury was here instructed they must believe that deceased *had made an attack* on appellant which caused him to have a reasonable expectation or fear of death or serious bodily injury. Therefore, the jury was required to believe that deceased

had made an attack on appellant before they could acquit, when the testimony all excluded such a theory. The testimony only raised the issue of apparent danger, first, from the movements of the deceased, and, second, these movements viewed in the light of previous threats. This becomes a serious matter by reason of the fact it was submitted to the jury directly in applying the law to the case, and it was upon that theory alone in applying the law to the case that they were authorized to acquit. Many of the authorities already cited are directly in point. See also Phipps v. State, 34 Texas Crim. Rep., 560; Phipps v. State, 34 Texas Crim. Rep., 608; Poole v. State, 45 Texas Crim. Rep., 348. The jury was not required to so believe before they could acquit. The defendant must so believe and the State must so prove.

The charge is also criticised because it limits the right of self-defense to the question of the "relative strength of the parties." This ought not to have been included in the charge, and upon another trial it should not be inserted in the charge. If there had been a test of physical strength in connection with the difficulty, this charge could have been appropriate if there had been any evidence on the question. The fact that the size or strength of the parties may be incidentally shown would not justify this charge in a case of this character. The parties did not have any test of physical strength; all the testimony excludes this. The State's contention is that appellant in an unwarranted manner fired upon and killed deceased when he was doing nothing. Appellant's testimony is that he made the insulting remarks about his mother, and reached to his hip pocket where he had seen him shortly before have a pistol. The question of relative strength of the parties as applied to the facts of this case ought not to have been charged. For authorities bearing upon this question, see Anderson v. State, 65 Texas Crim. Rep., 365, 144 S. W. Rep., 281; Sanchez v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124; Robbins v. State, 70 Texas Crim. Rep., 52, 155 S. W. Rep., 936; Lockhart v. State, 53 Texas Crim. Rep., 589; Vann v. State, 45 Texas Crim. Rep., 434; Hickey v. State, 45 Texas Crim. Rep., 297; Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051.

Another clause of the charge is criticised in this connection, and it is that wherein the court charged the jury that every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. The doctrine of excessive force finds no place in this record under the facts. Appellant either had the right of self-defense, viewed in the light of the movements of deceased and his threats, or he had no right of self-defense. The doctrine of excessive force does not apply in a case of this character. See Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 553; Mayhew v. State, 65 Texas Crim. Rep., 290, 144 S. W. Rep., 229; Antu v. State, 66 Texas Crim. Rep., 329, 147 S. W. Rep., 234; Comegys v.

State, 62 Texas Crim. Rep., 231; Parish v. State, 153 S. W. Rep., 327; Ballard v. State, 62 Texas Crim. Rep., 435; Scott v. State, 46 Texas Crim. Rep., 305; Huddleston v. State, 54 Texas Crim. Rep., 93; Rice v. State, 51 Texas Crim. Rep., 255. This error, it occurs to us, is intensified and made more acute against and injurious to the defendant by reason of the fact the court limited the right of self-defense in applying the law to the case to an actual attack, and further it required the jury to believe the actual attack was made. From any standpoint the doctrine of excessive force was not applicable to any phase of this record.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

·[Rehearing denied October 22, 1913.—Reporter.]