### WILL STUBBS v. THE STATE.

No. 4338.    Decided March 21, 1917.

**1.—Murder—Manslaughter—Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the defense offered testimony that the defendant shortly before the homicide motioned deceased away in response to something the latter said to him, showing that defendant did not wish deceased to follow him, such testimony was admissible on the theory of self-defense.

**2.—Same—Evidence—Undisclosed Motive.**

Upon trial of murder and a conviction of manslaughter, a State's witness should not have been permitted to testify for the State over the objection of the defendant, that a few days before the killing witness saw deceased and on that occasion he was not doing anything out of the ordinary; this occurring in the absence of the defendant.

**3.—Same—Evidence—Motive—Res Gestae.**

Upon trial of murder and a conviction of manslaughter, a State's witness was on the stand and had testified that he saw another State's witness put a knife in the deceased's pocket just a few minutes after he was shot and while he was lying on the ground where he fell, said witness should have been permitted to testify as to whether said other State's witness said anything to him.

about the knife at the time, and that said witness told the first witness he picked up said knife when it was open by the side of the body of the deceased, which said witness denied saying, as this was a part of the res gestae. Following Upton v. State, 48 Texas Crim. Rep., 289, and other cases. Prendergast, Judge, dissenting.

**4.—Same—Evidence—Bystander—Res Gestae—Rule Stated.** ·

Where the excluded testimony is res gestae it is admissible in evidence, and does not come under the rule applicable to bystanders. Following Felder v. State, 23 Texas Crim. App., 477.

**5.—Same—Evidence—Threats Against the Defendant by the Deceased.**

Where the testimony individuates the defendant either directly or by circumstances, or points to the defendant as the man against whom the deceased makes the threat, it is admissible in evidence, and it is error to rule it out.

**6.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded upon other grounds, the overruling of the application for a continuance need not be discussed on appeal.

**7.—Same—Manslaughter—Charge of Court—Practice on Appeal.**

Where defendant was given the lowest punishment for manslaughter, it is not very important that the charge of the court on manslaughter is subject to criticism.

**8.—Same—Self-defense—Threats—Standpoint of Defendant—Charge of Court—Rule Stated.**

A charge of the court on self-defense should never be given in the negative form, and the defendant is entitled to have submitted this right, as viewed from his standpoint and not of the jury, with a direct pertinent application of the law to the facts on trial.

Appeal from the District Court of Hopkins. Tried below before the ·· Hon. Wm. Pierson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*C. E. Sheppard, C. O. James,* and *H. C. Connor,* for appellant.

· *E. B. Hendricks,* Assistant Attorney General, for the State.—On question of charge of court: McCandless v. State, 42 Texas Crim. Rep., 58. ·

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter and allotted two years confinement in the penitentiary.

A brief statement of the evidence discloses that deceased had been employed by appellant as a farm hand. Among other things, deceased plowed a mule, and while plowing became angry and gave the mule a severe beating. Appellant, on account of this, discharged him. Deceased became enraged and made threats against appellant on account of it, also charging appellant up with the fact that he, deceased, had been fined for malicious mischief for beating the mule. Deceased left Texas and went to New Mexico, and was gone for a year or so and

returned, still making threats against appellant on account of these former matters; and further stated, in substance, that he intended to return to New Mexico but was going to inflict personal violence or perhaps kill appellant before he left Texas. They lived in the same neighborhood. Appellant owned, in addition to the farm, which was in the edge of the little town where the homicide occurred, a store and blacksmith shop, situated in the town. On the day of the homicide deceased went to the blacksmith shop where appellant was doing some blacksmith work and sat around the shop a little while until appellant ceased shoeing a horse. Appellant started to his store, which was a short distance away, deceased following. The store was closed and appellant went to the side door for the purpose of going into the store. Deceased was following him with a knife in his hand. Some of the testimony shows that he had the knife, while there may be some indicating that he did not have it. When deceased was within eight or ten feet of appellant, approaching him in a threatening attitude with the knife, appellant fired one shot, which terminated fatally.

A bill of exceptions was reserved to the action of the court refusing to permit a witness to testify that while en route from the blacksmith shop to the store something was said by deceased and appellant turned and motioned him away. Under the circumstances this testimony ought to have gone to the jury. It was beneficial to the defendant on the theory of self-defense. If he anticipated that deceased intended to execute his threats at the time he was following him he had a right to request him not to follow him, and also to introduce the fact that he did, and waived his hand as if to tell him to go away.

Another bill of exceptions recites that witness Henderson testifying for the State, was permitted to state that a few days before the killing he saw deceased, Manuel Grayson, around the stores at Bonanza, and that on such occasion he was not doing anything out of the ordinary. Various and sundry objections were urged to this, and the bill recites appellant was not present and was not aware of the fact that deceased was around the little town as indicated by the witness. This should not have been permitted to go to the jury. If appellant knew of the fact that he was around the town and had seen him, it would have been admissible as bearing upon the question of threats, otherwise it could not affect the defendant's mind. This could have had an injurious bearing against defendant as indicating deceased had no animus toward appellant. This testimony would not be admissible unless it could be shown that appellant was aware of the fact that deceased had been around the town as indicated by the witness.

Another bill recites that while Dr. Sanders, a State's witness, was on the stand and had testified that he saw Arch Henderson put a knife in the deceased's pocket just a few minutes after he was shot and while he was lying on the ground where he fell, he was asked by defendant's counsel if Arch Henderson said anything to witness about the knife at the time or about the time he put same in deceased's pocket. To this

the court sustained the State's objection. Witness would have stated that Henderson told him at the time he picked the knife up by the body of deceased it was open. This witness was further asked by appellant's counsel whether Henderson told him then and there that he had picked up the knife by the body of deceased and found it open, and the State's counsel again objected. If the witness had been permitted to answer he would have stated that "Arch Henderson told me that he picked up the knife there by the body of deceased, and that it was open when he picked it up." Henderson denied making the remark. This character of testimony has been the subject of quite a number of decisions in this State, some of which will be found collated by Mr. Branch in his work on Criminal Law, section 339. In the case of Upton v. State, 48 Texas Crim. Rep., 289, Mr. Branch thus states the ruling in that case: "What a messenger says in delivering a note, as to who had sent it, is admissible as res gestae of the act of delivery." Again he states the rule: "When an act is done to which it is necessary or important to ascribe a character, motive or object, what was said by the actor at the time from which the character, motive or object may be collated is part of the res gestae—verbal acts—and may be given in evidence whether or not the actor be a party to the suit." Stockman v. State, 24 Texas Crim. App., 387; Upton v. State, 48 Texas Crim. Rep., 289; Russell v. State, 11 Texas Crim. App., 288.

In the Russell case, supra, Judge Hurt, stating the account given by the witness, says: "The deceased's account is, that the Russell boys, when he overtook them, cursed him. Carter, a witness for the State, heard two 'voices cursing each other.' When Carter and others overtook deceased, he had just separated with the Russell boys, and said they were down there in the road cursing him, and that he was going down after them, and loped off. Wm. Russell states that when they heard deceased come running after them that they increased their speed to a gallop towards home. Defendant proposed to prove by Wm. Russell that he, defendant, then said: 'I heard John Lawrence coming; let us gallop up, I don't want to have any difficulty with him.' This was objected to by the State, and the objections were sustained by the court, and defendant reserved his bill. This was error. This evidence was very evidently admissible. There could have been but one objection to it, and that is that it may have been manufactured by the defendant, and made self-serving declarations. This all may be true, but if all evidence which may have been manufactured for the occasion is to be rejected, we fear that the limits would be very narrow indeed. The court below admitted the fact that they increased their speed to a gallop. This was an act, and if the act was evidence, certainly what was said at the time in reference to the act was also admissible. These facts were so closely connected with other acts and the killing, in point of time, as to constitute res gestae, so called." This rule was followed in Stockman v. State, and Upton v. State, supra, and quite a lot of other cases. In this connection it was shown that

deceased had the knife; it was identified as his knife, and Henderson picked it up where the body fell in front of his head about two feet. He placed the knife in the pocket of deceased, and appellant desired to show, in connection with picking the knife up and returning it, that he remarked that it was open and he closed it. The declaration of Henderson at the time was made in connection with his act and as a part of it in picking up and returning the knife to the pocket of deceased. If the knife was open, as stated by Henderson, it was favorable to appellant's theory that deceased was approaching him with an open knife in his hand at the very time he fired the shot. Henderson testified for the State that the knife was half open, but he did not remember making the remark to Dr. Sanders that the knife was open. Another witness did testify in that connection that the deceased's knife was open; he also testified with reference to Henderson picking up the knife and placing it in the pocket of deceased. The evidence is not right clear one way or the other as to the then whereabouts of defendant, except that he was near by, and some of the testimony indicates he may have been present and within hearing of the remarks that were made at the time. Dr. Sanders should have been permitted to testify to the matters sought to be elicited. It was a part of the matters brought out by the State, and within two or three minutes and almost immediately after the shot was fired. The knife being shown to be the property of deceased; that he had it in his hand; Henderson picked it up and returned it to his pocket, closing it as he did so, Henderson's remarks at the time, it occurs to the writer, would be a part of the res gestae of that transaction, and explanatory of it. It was corroborative of other witnesses who state deceased had the knife in his hand. Foster's case, 8 Texas Crim. App., 248. Scott testified that the knife was open, and was picked up and returned to the pocket of deceased by Henderson, but Henderson did deny making the statement to Dr. Sanders that it was open. Upon another trial if the circumstances should be developed as shown by this record and the bill of exceptions, we are of opinion that Dr. Sanders should be permitted to testify as shown by the bill of exceptions. This would not be regarded as the statement of bystanders as understood legally under the rule of the exclusion of the statements of bystanders. The rule applicable to bystanders was pretty fully discussed by Judge Hurt in the case of Felder v. State, 23 Texas Crim. App., 477. We do not believe this testimony and this ruling of the court comes within the purview of the rule laid down with reference to bystander's testimony. If it is res gestae, it is admissible. This is fixed by the statute as the writer understands it. Art. 811, C. C. P. Any and every fact has its res gestae.

Another bill recites that the witness Nat Gafford testified he knew deceased, and that he saw him at Brashear, in Hopkins County, on the day that he came back from New Mexico, and just a few days before the killing; that he had a conversation with deceased at that time, and in that conversation deceased was talking about what a good

country they had in New Mexico, and witness asked him what he came back to this God forsaken country for, and deceased said he had a settlement to make with a God damned son-of-a-bitch here and he had come back to make it. The State then moved to exclude this testimony from the jury because it had no reference to anybody. Appellant offered this testimony to show that this threat was intended against the defendant. The bill recites that there was no evidence tending to show that deceased had any ill-will towards any other person in the country except the defendant. Numerous threats against the life of defendant were shown to have been made by deceased on different occasions before he left for the west, and also after returning from the west, and just prior to the killing. The bill further recites all the testimony shows that the deceased meant defendant as the party with whom he had a settlement to make, and that the testimony was admissible to show the condition of the mind of deceased toward defendant, and his reason for returning to this country, and to explain why he followed the defendant just prior to the killing. We are of opinion the court was in error in excluding this testimony under the statements in the bill of exceptions, which is approved without qualification by the judge. If this testimony individuated the defendant either directly or by circumstances or pointed to the defendant as the man against whom the threat was made, and with whom he was going to have the settlement, it was admissible. We think under the statements of this bill of exceptions this testimony ought to have gone to the jury.

There was a motion for continuance overruled. This was made on account of the absence of a witness to prove threats. This question is not discussed for the reason this witness can be secured upon another trial.

There were exceptions reserved to the charge on manslaughter. In view of the fact that appellant was given the lowest punishment for manslaughter we are of opinion that these are not very important, though the charge is subject to criticism.

There are quite a lot of exceptions to the charges with reference to self-defense, viewed both from the standpoint of threats and from self-defense independent of threats. We have not thought it advisable to go into a full discussion of these matters as presented, but mention them so that upon another trial the charges will avoid the defects. These charges are, perhaps, subject to two phases of criticism: First, they are too broad and general, and given in the abstract, without a sufficient direct application of the law to the facts; second, the charges present the matter from the standpoint of the belief of the jury rather than from the standpoint of the defendant. These matters are properly raised, we think, in the exceptions of appellant, and in requested but refused instructions. Charges on self-defense should never be given in a negative form. If appellant is entitled to the right of self-defense under the facts of the case, he is entitled to have charges given as viewed from his standpoint and not that of the jury. The charges are

rather confused on these questions, and upon another trial the issue of self-defense should not be presented from the viewpoint of the jury but from the standpoint of the defendant, with a direct pertinent application of the law to the facts produced on the trial. While the charges of the court in a general way present the theories of self-defense in the abstract, yet they are not sufficiently pertinent and affirmative, and there is, as before stated, rather a leaning towards instructing the jury to view the matters as they believed the facts to be instead of the case as presented to appellant at the time he acted. The defense must be viewed as understood by the accused at the time of acting and not as viewed by the jury in the light of subsequent events, or as they view the case at the time of trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

MORROW, JUDGE (concurring).—An important issue and one upon which there is conflict of testimony was whether the deceased had an open knife in his hand at the time of the homicide. The State's witness Arch Henderson, on his direct examination, testified that he and Dr. Sanders reached the deceased a very short time after he was killed; that he (witness) picked up the knife (which by other testimony was shown to have belonged to deceased); that it was lying near the body of deceased and was partly open, and he picked it up and laid it in deceased's hat a minute and then put it in his pocket. On this examination he said: "I didn't say anything to anybody about the knife." On cross-examination he testified that he did not remember stating in the presence of Sanders that the knife was open. Appellant subsequently sought to show by the witness Sanders that the State's witness Arch Henderson at or about the time the knife was picked up stated that it was open. This testimony was excluded on objection of the State's counsel; and I think, under the circumstances detailed, that the court committed error in excluding it.

I concur in the reversal.

PRENDERGAST, JUDGE.—In no contingency was the evidence of Dr. Sanders, as to what he would have testified that Arch Henderson said about the knife, admissible as res gestae. At the most, if admissible for any purpose at all, it might have been for attempted impeachment of said Henderson.