## TOM HAYS v. THE STATE.

No. 4744. Decided December 21, 1917.

**1.—Murder—Continuance.**

Where the judgment was reversed and the cause remanded the overruling of the application for continuance need not be considered.

**2.—Same—Evidence—Cross-examination—Deserter.**

While it could be shown that a State's witness was a deserter from the army, the reasons for such desertion could also be shown without detail of incident and circumstance.

**3.—Same—Self-defense—Defendant's Standpoint.**

Where, upon trial of murder, the charge of the court on self-defense submitted this theory from the standpoint of the jury rather than from the standpoint of the defendant the court should have submitted a requested instruction to meet this defect, especially as there were different theories of defense under the evidence.

**4.—Same—Manslaughter—Charge of the Court.**

Where, upon trial of murder, the evidence raised the issue of manslaughter the court should have submitted a charge thereon. Prendergast, Judge, dissenting.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Sid Crumpton* and *O. B. Pirkey,* for appellant.—On question of failure to charge on manslaughter: Green v. State, 58 Texas Crim. Rep., 428, 126 S. W. Rep., 860; Miller v. State, 52 Texas Crim. Rep., 72, 105 S. W. Rep., 502.

On question of self-defense: Sanchez v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder, his punishment being assessed at a term of five years in the penitentiary.

The application for continuance will not be discussed as it may not occur upon another trial. The witnesses may be obtained by that time.

There is a bill of exceptions reserved to the action of the court with reference to the examination and cross-examination of the witness,

Asbill. This witness was an important one for the State and testified to the immediate facts attending the killing. Upon cross-examination he was asked if he was not a deserter from the Federal army. This was answered in the affirmative as shown by the statement of facts, but the bill indicates that he was not permitted to answer on objection of the State. However, later the State recalled and proved by him that he was a deserter, and went into quite a lengthy detail of his enlistment; his history in the army, his desertion, the whys and wherefores for his desertion, his peregrinations over the country after his desertion, and finally, his return to the neighborhood of where this killing occurred, in which county he seems to have enlisted in the army. This matter is not discussed particularly because it may not occur upon another trial, and ought not to, as it occurred upon this trial as shown in this record. The writer is of opinion that it can be shown that he was a deserter from the army, and his reasons for such desertion, but the long details and circumstances and incidental matters contained in this bill of exceptions should not have been permitted. The bill of exceptions covers quite a number of pages and a great many exceptions. These matters will not be incorporated in this opinion nor discussed further than stated.

Exception was reserved to fifth and sixth subdivisions of the charge on self-defense and a special charge requested, which was refused. In subdivision 6 the court instructed the jury that if they should believe the defendant killed deceased, Bean, and at the time of doing so Bean had made an attack on defendant which, from the manner and character of it, caused the defendant to have a reasonable expectation or fear of death or serious bodily injury, and acting under such reasonable expectation and fear the defendant killed deceased, they would acquit him. The fifth subdivision reads thus: "A reasonable apprehension of force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant." It will be noticed these charges submitted the self-defense theory from the standpoint of the jury rather than from the standpoint of the defendant, for that body was instructed, if they should believe, at the time of so doing, the deceased had made an attack on the defendant, which, from the manner and character of it caused the defendant to have a reasonable expectation or fear of death, etc. The charge should have instructed the jury, not as they viewed it in the light of the testimony and the events subsequent to the homicide, but as defendant viewed it at the time of the killing. The charge requested by appellant to meet what he deemed to be defects in the other paragraph of the court's charge is as follows:

"You are charged the law to be, that should you find from the evidence that at the time the defendant killed the deceased, that the

deceased by any act done, or by words coupled with such acts, induced the defendant to believe that he, the deceased, was then in the act, or was about to inflict either death, or serious bodily injury upon the defendant, and you further believe from the evidence that at the time it reasonably appeared to the defendant that it was then the intention of the deceased to inflict death or serious bodily injury upon the defendant, then, in such case, the defendant under such circumstances shot and killed the deceased, he would be justifiable and you will find him not guilty. You are further charged that in such case, and under such circumstances it matters not whether the danger was real, whether in fact it existed, or whether it was merely colorable, if, from the defendant's standpoint, taking into consideration all the circumstances of the case, it would reasonably appear to him that he was in danger of death, or serious bodily injury from the deceased, he had the right to kill him, although in fact such danger did not exist."

This charge should have been given. The court's charge was not full enough. There were different theories made by the evidence as is usual in such cases. There had been a previous difficulty between deceased and defendant some years prior to this transaction. On the night of the homicide the deceased, Bean, and defendant were at a Christmas tree. Defendant went at the request of parties to take part in making music for the occasion with a string band, he being a performer on the guitar. Defendant himself did not own the guitar. Upon reaching the scene of the festivities it was discovered that strings could not be obtained for the instruments, and this part of the performance did not occur. The deceased was drinking. Just exactly the state of intoxication is not clear from the testimony. He made threats on the particular night against the life of appellant, and requested a witness, named Smith, to get defendant out of the house so he might kill him. A brother of appellant was present. These matters were known to several but nobody would induce defendant to leave the house, and finally deceased himself went to and requested appellant to go out of the house with him. Appellant followed deceased to the door which opened upon a gallery and declined to go farther. Deceased insisted, but appellant declined. Up to this point there seems but little controversy or conflict in the testimony. The gallery was six or seven feet in width. Appellant was standing outside the door on the gallery. When deceased reached the steps he turned when defendant declined to go farther. He had one foot on the step and one on the floor of the gallery. Some language occurred which is not necessary here to repeat, but deceased started at him with a knife in a striking attitude and the shooting occurred. Another theory was that deceased did not have a knife, and did not in fact make an attack or attempt to make an attack on appellant. There is other testimony to the effect that deceased started towards appellant as if to attack him. This phase does not mention the knife. So there seems to be three theories: one was that deceased was armed with a knife and making an attack, cutting at appellant;

one that he did not make any attack and had no knife, and the other was he attempted to reach defendant, and the witnesses saw no knife. There was a knife, however, found on the ground an hour or two after the homicide near where deceased fell. This is a sufficient statement. Under these theories the court's charge on self-defense was too restrictive and the requested charge asked by appellant should have been given. These matters are timely and properly presented in the record.

Appellant also contends, under this state of case, that the issue of manslaughter was raised. We are of opinion this contention is correct, and that upon another trial this phase of the law should be given in charge to the jury.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE.—I think manslaughter was not in the case.