(86 Tex. Cr. R. 401)

SINGLETON v. STATE.    (No. 5596.)

(Court of Criminal Appeals of Texas.    Dec. 10, 1919.)

1. HOMICIDE ⬅116(2)—KILLING IN SELF-DEFENSE MUST BE DETERMINED FROM DEFENDANT'S STANDPOINT.

Where a plea of self-defense is interposed in a prosecution for homicide, it is fundamental that the killing must be viewed from the standpoint of defendant, as understood by him at the time he acted.

2. HOMICIDE ⬅300(14) — INSTRUCTIONS ON SELF-DEFENSE INSUFFICIENT AS NOT BASED ON DEFENDANT'S STANDPOINT.

In a prosecution for manslaughter, an instruction as to self-defense held erroneous as not clearly stating that the act of defendant, alleged to have been in self-defense, must be viewed from defendant's standpoint at the time.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

L. F. Singleton was convicted of manslaughter, and he appeals. Reversed and remanded.

Breedlove Smith and Jackson & Isaacks, all of El Paso, and Black & Smedley, of Austin, for appellant.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of manslaughter, and awarded five years in the penitentiary.

The question presented for revision is the

exceptions to the court's charge on self-defense and refusal to give special requested instructions on the same subject. In paragraph 11 of the charge the court gave an abstract definition of self-defense. Section 12 of the court's charge undertakes to submit that issue. The court therein instructed the jury that if they believed defendant killed deceased, but further believed at the time of so doing the deceased had made, or was about to make, an attack on him, or that it reasonably appeared to the defendant that deceased had made, or was about to make, an attack upon him, which from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and the disposition of the deceased, caused him to have a reasonable fear or expectation of death or serious bodily injury, and that, acting under such reasonable expectation or fear, the defendant killed the deceased, or if they had a reasonable doubt thereof, then they will acquit the defendant. Then follows the presumption from the use of a deadly weapon. The exception was based upon the fact that it did not inform the jury that in passing on the defendant's right of self-defense they must view the matter from the standpoint of the defendant at the time. To meet this defect in the charge appellant requested the following:

"If at the time of the killing the conduct of the deceased, viewed in the light of all the circumstances, was such as to create in the mind of the defendant a reasonable apprehension of death or some serious bodily injury, although in fact no such danger existed, the defendant's right to kill the deceased or to prevent the apparent injury would be as complete as if the danger was real, and the appearances of indications of danger must be viewed and considered from the defendant's standpoint in determining whether or not they were reasonably calculated to produce, and did produce, in his mind the fear of death or some serious bodily harm."

[1] It is a fundamental proposition in self-defense that the killing must be viewed from the standpoint of the defendant as understood by him at the time he acted. The standpoint of defendant in self-defense is the essential and pivotal point of the doctrine of that phase of the law. The accused is not tried from the standpoint of the other side. It is not what the jury may think of the danger viewed in the light of subsequent events, or even at the time. It is what defendant thought and believed and which prompted his action. Any charge on self-defense of real or apparent danger that omits from the charge this theory of the law overlooks the fundamental proposition controlling and upon which it is based. See Bennett v. State, 80 Tex. Cr. R. 652, 194 S. W. 148; Hays v. State, 199 S. W. 621; Alsup v. State, 210 S. W. 195; Stubbs v. State, 81 Tex. Cr. R. 75, 193 S. W. 677; Lee v. State, 67 Tex. Cr. R. 137, 148 S. W. 706; Welborn v. State, 78 Tex. Cr. R. 45, 179 S. W. 1179; Holmes v. State, 69 Tex. Cr. R. 588, 155 S. W. 205; Hudson v. State, 59 Tex. Cr. R. 650, 129 S. W. 1125, Ann. Cas. 1912A, 1324; Lundy v. State, 59 Tex. Cr. R. 131, 127 S. W. 1032; Best v. State, 58 Tex. Cr. R. 327, 125 S. W. 909; Standfield v. State, 208 S. W. 532. See Branch's Ann. P. C. pp. 1074, 1075, 1077. Mr. Branch lays down this proposition:

"A charge on apparent danger is erroneous if it authorizes the jury to determine whether there was a reasonable appearance of danger. The theory of apparent danger should be submitted from the standpoint of the defendant"— citing Jordan v. State, 11 Tex. App. 449; Adams v. State, 47 Tex. Cr. R. 347, 84 S. W. 231; Swain v. State, 48 Tex. Cr. R. 103, 86 S. W. 335; Lyons v. State, 71 Tex. Cr. R. 189, 159 S. W. 1072.

Again he says:

"It is the belief of defendant as to the existence of facts, and not the truth of the facts, that should be submitted to the jury"—citing Arthur v. State, 46 Tex. Cr. R. 479, 80 S. W. 1017; Stacy v. State, 48 Tex. Cr. R. 95, 86 S. W. 327; Swain v. State, 48 Tex. Cr. R. 98, 86 S. W. 355; Puryear v. State, 50 Tex. Cr. R. 464, 98 S. W. 258; Winn v. State, 54 Tex. Cr. R. 538, 113 S. W. 918; Williams v. State, 61 Tex. Cr. R. 356, 136 S. W. 771; Maclin v. State, 65 Tex. Cr. 384, 144 S. W. 951; Black v. State, 65 Tex. Cr. R. 336, 145 S. W. 944; Bussey v. State, 69 Tex. Cr. R. 98, 153 S. W. 874; Lyons v. State, 71 Tex. Cr. R. 189, 159 S. W. 1072.

If at the time defendant fired the fatal shot it reasonably appeared to him from the circumstances of the case, viewed from his standpoint, that the deceased was about to kill him or inflict serious bodily injury upon him he was justified in killing the deceased, although in fact the jury might believe from the evidence that he was in no danger at the time of being killed or injured by deceased. Jones v. State, 17 Tex. App. 612; Gonzales v. State, 28 Tex. App. 135, 12 S. W. 733; Nalley v. State, 28 Tex. App. 391, 13 S. W. 670; Reed v. State, 32 Tex. Cr. R. 25, 22 S. W. 22; Swain v. State, 48 Tex. Cr. R. 98, 86 S. W. 335; Johnson v. State, 63 Tex. Cr. R. 50, 138 S. W. 1024.

Again Mr. Branch states this rule:

"If it reasonably appeared to the defendant from the circumstances of the case, viewed from his standpoint at the time, that the danger existed, and he acted under the reasonable belief that it did exist, he was justified in defending against it to the same extent and under the same rules permitted in case the danger had been real." Jones v. State, 17 Tex. App. 612; Tillery v. State, 24 Tex. App. 272, 5 S. W. 842, 5 Am. St. Rep. 882; Meuly v. State, 26 Tex. App. 305, 9 S. W. 563, 8 Am. St. Rep. 477; Swanner v. State, 58 S. W. 74; Snowberger v. State, 58 Tex. Cr. R. 530, 126 S. W. 885.

On page 1077 of Mr. Branch's Ann. P. C. § 1928, there are a great many authorities collated to the effect: Whether the danger is

real or apparent is to be determined from the defendant's standpoint. A charge on self-defense is erroneous if it fails to present the issue of self-defense from the standpoint of defendant and requires the jury to find that the danger in fact existed. The authorities cited under these propositions are numerous, commencing with Jordan v. State, 11 Tex. Cr. App. 448, Lyons v. State, 71 Tex. Cr. R. 189, 159 S. W. 1072, and Knox v. State, 74 Tex. Cr. R. 126, 167 S. W. 729. A charge on apparent danger should directly instruct the jury that the reasonableness of the apprehension of danger should be judged from defendant's standpoint. Under this proposition Mr. Branch cites a number of authorities on page 1078 of his Ann. P. C. It will be observed that it is a fundamental proposition under our Penal Code that the danger must be viewed from the standpoint of the defendant, and not from the standpoint of the jury or the opposing side. It is from his viewpoint of it that he acted. If he believed that his life was in danger or his body of serious bodily injury, he had a right to shoot. The court's charge does not embody the idea that it must be viewed from the defendant's standpoint as required by the law. It is said in one of these decisions:

"It is the belief of the accused which furnishes the criterion. This applies as well to the question of the acts of the deceased. It is the belief of the accused that his life was in danger, or his body of serious bodily injury, viewed from his standpoint, which is the basis of our law, under such circumstances. The acts and demonstrations, in view of threats by deceased, are viewed from the defendant's standpoint at the time he acted, and if defendant believed those things, he was entitled to act the same as if they were true."

This view of the case must, of course, be in light of the facts. The defendant cannot arbitrarily believe his life in danger. What the jury may believe about it in the light of testimony showing that the deceased was not purposing inflicting death or serious bodily injury is not the criterion. It is not their belief in the light of subsequent development that forms the criterion, or the basis of appellant's right of self-defense. It is the belief of the defendant, who is being tried for his life and liberty, under all the circumstances as they presented themselves to his mind at the time he acted, that should govern the jury in rendering their verdict. The jury may have believed, and the court may also have thought, that appellant was guilty of manslaughter under the charge given by the court, and had an appropriate charge been given their verdict might or might not have been as was returned into court. Appellant was awarded five years, which is three years in advance of the minimum. But in any event, appellant had the legal right to have his case passed on from his standpoint as he viewed it at the time he acted.

[2] A statement of the facts in reference to this matter would be of little practical value, but the testimony does show that appellant testified that at the time he fired the deceased was pursuing or approaching him with an iron chair; that he shot to stop deceased, and that he believed at the time he so fired that if he did not shoot deceased would kill him. He also testified when deceased jumped up he grabbed the chair in which he was sitting, "and I broke and ran back by the stove, and began shooting. I could not tell you how far he had advanced toward me with that chair when I began shooting, because I was getting away from him in a hurry, when he grabbed that chair. I shot to stop him, because I most knew he was going to kill me. At the time I shot I certainly was scared of him. I would not ever have shot if I wasn't. I believed at the time, if I did not shoot him, he would kill me. He weighed about 200 pounds. I weigh 130 or 135." The witness Reynolds, an officer, stated that when he arrived upon the scene and saw the body of deceased, deceased had a chair clutched in his right hand. The witness Edwards, as did other state's witnesses, stated deceased had cursed defendant and called him a son of a bitch just prior to the shooting. There is some question as to the position deceased was occupying and what he was doing at the time the shot was fired. Appellant's testimony is stated. One of the witnesses stated deceased was sitting in a chair at the table, and defendant holloed, "Look out," and fired. Most of the witnesses testified there was no chair at the table, and that deceased was not sitting, but was standing, the chair being a few feet away from him and in the direction of the stove. The testimony for the defendant with reference to the exclamation, "Look out" was to the effect that when deceased grabbed the chair he holloed "Look out," and that he (defendant) did not hollo at all. It is unnecessary to go into the details of this testimony. This much of it is stated to show that the charge given by the court was defective, and the exception well taken, and there was error in refusing appellant's special requested instruction.

The judgment is reversed, and the cause remanded.