W. W. BATCHELOR, JR. v. THE STATE.

No. 15001.   Delivered June 1, 1932.
Reported in 50 S. W. (2d) 1099.

The opinion states the case.

*Bowd Farrar* and *Jno. M. Hatter,* both of Waxahachie, for appellant.

*Archie D. Gray,* Criminal District Attorney, of Waxahachie, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery; the punishment, confinement in the penitentiary for five years.

J. C. Rose and Spencer Adams, both of whom were white men, and Alto McGowan, a negro, testified for the state, in substance, as follows: The three of them came from Dallas into Ellis county on the night of January 28, 1931, to make a delivery of five cases of whisky at the underpass between Red Oak and Waxahachie, Texas. The whisky was to be delivered to Stacy Childress, whom the parties believed to bear the name "Bill Green." They arrived with the whisky some time between 7:30 and 10 o'clock at night, and, being apprehensive, they went on up the road two or three miles, put the whisky out of the car, and came back and stopped at the car occupied by Stacy Childress. While talking to Childress, Jim Everett and J. W. Cadle came running up from a Ford roadster they had parked up the road behind Childress' car, and told them to "stick them up." Everett had a flashlight and J. W. Cadle, a pistol. Cadle directed the pistol at the witnesses. Childress searched Adams and Rose. He took fifty cents off of Rose and put it back in Rose's pocket, saying that he was a "cheap s— of a b— of a bootlegger." He got nothing off of Adams. Childress then searched Alto McGowen and took $95 from him. The witnesses were then told to get down the road, and they left in their car, going toward Dallas. A Chevrolet roadster

followed them for a long way toward Dallas. After reaching Dallas the witnesses immediately turned around and came to Waxahachie, where they reported the robbery to the officers.

Stacy Childress, an accomplice witness, testified for the state, in substance, as follows: Pursuant to an agreement with J. W. Cadle, he had arranged to buy the whisky from the negro Alto McGowan. He had called Cadle from Waxahachie and told him to meet him at the underpass, it being the purpose of the parties to "hold McGowan up" and take the whisky away from him. Cadle was to notify the other participants. Appellant, who was a peace officer, was present in a Ford roadster, which was parked up the road. After he (Childress) Cadle and Jim Everett had held the parties up and taken $95 off of McGowan, he (Childress) went up the road to where appellant was and gave him the money. Appellant said: "Let me keep this money. They might catch you and there might be something noised about it." Appellant said he could split the money later. Jim Everett and appellant then got in Everett's car and followed Rose, Adams, and McGowan along the highway toward Dallas. He (Childress) and Cadle took the whisky and brought it to town. He got six and one-half gallons of the whisky, which he carried to his father's house, and Cadle carried the balance away in appellant's car.

Testifying in his own behalf, appellant admitted that he was at the underpass, but declared that he had gone there as a peace officer for the purpose of searching parties whom he expected to bring whisky into Ellis County. He testified that he knew of no robbery being committed on that night, and denied that the accomplice Childress gave him any money. He said when the parties appeared they stopped for a moment at Childress' car and then went on down the road. He testified, further, that, after the parties started on toward Dallas, he and Jim Everett followed them for a short distance. In view of the disposition we must make of the case, we have not undertaken to state in detail appellant's testimony. Suffice it to say that appellant denied guilty connection with the transaction.

The court instructed the jury as follows: "I instruct you that the witness Stacy Childress is an accomplice. Now you can not convict the defendant upon his testimony alone, unless you first believe that his testimony is true and tends to connect the defendant with the offense charged; and then you cannot convict the defendant upon said testimony unless you further believe that there is other testimony in the case corroborative of the testimony of said Stacy Childress tending to connect the defendant with the offense charged; and the corroboration is not sufficient if it merely shows the commission of the offense, but it must go further and tend to connect the defendant with the commission thereof."

Appellant timely and properly excepted to the foregoing charge on

the ground that the jury were instructed therein that the testimony of the accomplice must "tend" to connect the appellant with the offense charged. The exception was well taken. The vice in the charge is that the accomplice's testimony must "tend to connect."

In condemning a similar charge, this court, in Oates v. State, 51 Texas Crim. Rep., 449, 103 S. W., 859, 861, used language as follows: "It authorizes the conviction of appellant upon the testimony of an accomplice, which 'tends' to show that appellant committed the offense charged, provided he is corroborated by evidence 'tending' to connect the defendant with the offense. So this charge, condensed, may be stated to announce the proposition that, if an accomplice detailed evidence which 'tends' to show an accused party guilty, it is sufficient, provided there is corroboration tending to connect the defendant with the offense charged. So we have, in place of evidence which must prove beyond a reasonable doubt the guilt of the accused, facts from two sources, one legally discredited, which tends to show guilt. This is not legally sufficient. Facts must do more than 'tend' to show guilt. They must be cogent enough to overcome the presumption of innocence and reasonable doubt."

In condemning a similar charge in Grant v. State, 60 Texas Crim. Rep., 358, 132 S. W., 350, this court, speaking through Judge Ramsey, used language as follows: "Nor do we think that the ingenious argument of our able Assistant Attorney General is correct that, since in this case the testimony of the accomplice comprises within itself every fact essential to conviction, the charge should therefore be sustained. That this consideration would have weight with a legal mind trained in weighing testimony and construing charges may be true. But we doubt if the average jury would so interpret and consider the case." See, also, Sealey v. State, 120 Texas Crim. Rep., 260, 47 S. W. (2d) 295.

Bill of exception No. 5 presents the following occurrence: State's witness Winterrowd testified, over appellant's proper objection, that he went to Childress' home on the morning after the robbery and knocked on the door; that Mrs. Childress came to the door and he entered the house; that he found Childress covered up in bed; that when he pulled the cover off of him, Childress jumped up and said: "What's the matter; has somebody been hijacked?" Appellant was not present when this statement was made by Childress. We think it was improperly admitted. It is the general rule that proof of acts or declaration of a co-conspirator done or made in the absence of the defendant on trial after the commission of the offense and after the conspiracy is complete by the abandonment or termination of the enterprise is not admissible against such defendant. Branch's Annotated Penal Code, sec. 695; Parnell v. State, 50 Texas Crim. Rep., 419, 98 S. W., 269. Other bills of exception relating to declarations made by the co-conspirator Childress, after the termination of the con-

spiracy, are found in the record. We have not undertaken to discuss each bill.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.